Jacob S. BROWN, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

Nos. C2-89-853, C4-89-854.

Supreme Court of Minnesota.

Dec. 22, 1989.

Susan K. Maki, Asst. State Public Defender, University of Minnesota, Minneapolis, for appellant.

Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

COYNE, Justice.

Defendant, Jacob S. Brown, appeals from an order of the district court denying him postconviction relief from his convictions of first-degree murder and attempted first-degree murder, for which he is serving concurrent terms of life imprisonment and 130 months in prison. Defendant argues that the district court (1) erred in refusing to allow him permission to withdraw the guilty pleas on which the convictions are based or (2) at least erred in failing to conduct an evidentiary hearing. We affirm the denial of relief. If, however, defendant renews his petition to withdraw his guilty pleas and pleads factual allegations supporting the need for an evidentiary hearing, then the district court must hold an evidentiary hearing.

This proceeding arises out of the events of the morning of December 17, 1987, when defendant went to the residence of his estranged friend, Carmen Larson, to pick up some personal property. While there defendant attempted to discuss their relationship. According to defendant's testimony at the guilty plea hearing, when he refused Larson's request that he leave, Larson went to her bedroom and grabbed a baseball bat. Defendant admitted that he took the bat from Larson and began hitting her on the head with it. He also admitted that he went into a bedroom and beat Larson's friend, Michelle Raisch, with the bat. Finally, he admitted that he twice grabbed a knife from the kitchen and stabbed Larson a total of 10 times and Raisch at least 21 times. Larson died later that day. Raisch survived and identified defendant as the assailant.

Police arrested defendant at the apartment he shared with his mother. In a warranted search, the police seized a garbage bag containing defendant's bloody clothing from a dumpster behind the apartment building. Police also learned that defendant was under investigation for the theft of a government vehicle and that Larson not only was the government's primary witness against defendant but had given a statement.

The grand jury indictment charged defendant with first and second-degree murder in the killing of Larson and with attempted first and second-degree murder and assault in the first degree in the attack on Raisch.

Represented by counsel, defendant waived his right to a jury trial. On the day set for trial, defendant agreed to enter guilty pleas to first-degree murder and attempted first-degree murder. After accepting the pleas, the trial court sentenced defendant to consecutive terms of life in prison and 130 months.

Later, defendant's attorney filed a petition for postconviction relief seeking an order making the sentences run concurrently pursuant to a "side agreement" not made a part of the public record at the time the guilty pleas were entered. As we understand the terms of this agreement, defense counsel was informed that he should wait six months and then petition for postconviction relief. The sentence then would be modified, provided defendant's behavior in prison was not inconsistent with such a modification.

■ Because the district court granted the petition for postconviction relief filed by defendant's trial counsel and ordered that the sentences run concurrently, the agreement does not affect the course of this appeal. We are compelled, however, to reiterate our disapproval of covert agreements. As we said in *Smude v. State*, 310 Minn. 225, 227, 249 N.W.2d 876, 877 (1976), one of the reasons for requiring record disclosures of plea agreements is to deter the making of undesirable bargains by subjecting them to public scrutiny. The side agreement in this case not only was not open to public scrutiny but was highly unorthodox in content.

The issues on this appeal relate not to the sentence but to a pro se motion filed by defendant seeking permission to withdraw his guilty pleas and face trial on the indictment. The circumstances relating to this motion are not clear from the record. Defendant's brief, filed by the state public defender, states, "At the hearing on [the postconviction] petition, [defendant] made a *pro se* motion requesting that he be allowed to withdraw his pleas of guilty." The district court file supplied to us on appeal does not contain copies of the pro se pleadings allegedly filed by defendant, but the state public defender's brief on appeal contains copies of them. At the outset of the hearing, the district court told defendant that defense counsel had requested that the sentences be made to run concurrently. Defendant said that he was "considering" withdrawing his guilty pleas. The district court told him that "that would be another matter." Neither defendant

nor his attorney expressly requested permission on the record for defendant to testify or for defendant to call any witnesses.

■ As we have stated on numerous occasions, there are three basic prerequisites to a valid guilty plea: the plea must be (a) accurate, (b) voluntary, and (c) intelligent (that is, knowing and understanding). *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). The main purpose of the accuracy requirement is to protect the defendant from pleading guilty to a more serious offense than he could properly be convicted of at trial. *Id.* The accuracy requirement also helps the court determine whether the plea is intelligently entered and facilitates the rehabilitation of the defendant (it is thought that a defendant who expressly admits the basic facts underlying a guilty plea is a more likely candidate for successful rehabilitation). *Id.* The voluntariness requirement helps insure that the defendant does not plead guilty because of any improper pressures or inducements. *Id.* The requirement that the plea be knowingly and understandingly made is designed to insure that the defendant understands the charges, the rights being waived and the consequences of the guilty plea. *Id.*

■ A defendant is free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate in one or more of these respects. Although this appeal is from the denial of postconviction relief, it is in practical effect a direct appeal on the record made at the time the pleas were entered. We have no difficulty in concluding that, although the interrogation of defendant was not a model interrogation, the record is adequate to support the pleas. The record shows that defendant was represented by an attorney, that he had an adequate opportunity to consult with his attorney, that he was pleading voluntarily, that he was aware of the charges against him, that he was aware of the rights he was waiving, and that he understood the consequences of his pleas. The record also is sufficient to establish that defendant was not pleading guilty to a more serious offense than he *could* be con-

victed of at trial. *State v. Flores*, 418 N.W.2d 150, 157 (Minn.1988) (evidence needed to establish premeditation). When defendant went to the house he may not have intended to kill Larson or Raisch but that does not mean that he did not deliberately formulate a plan to kill them while he was at the house, particularly in the intervals between brutally beating first one woman, then the other, with the baseball bat, then obtaining a knife from the kitchen, and when the first knife broke, returning to the kitchen for a second knife. The number of stab wounds, of course, is highly relevant evidence that the ultimate finder of fact could have used to conclude that defendant did premeditate the deaths of the women.

■ An alternative approach to appealing directly is for a defendant to seek a postconviction evidentiary hearing and prove at that hearing that even though the record made at the time he entered the guilty plea was adequate, he is still entitled to withdraw his plea because the plea was made involuntarily or without knowledge of the charges, the law or the consequences. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), is an example of a case in which the defen-

dant would not have been entitled to withdraw his guilty plea had it not been for a postconviction evidentiary hearing and findings of fact favorable to the defendant.

■ In part because of the confused state of the record, in part because of the vague, conclusory nature of the allegations made by defendant in his pro se *motion*, and in part because the record does not establish that either defendant or his attorney expressly requested an opportunity for defendant to testify, to call witnesses or to present other evidence, we cannot say that the district court in this case erred in failing to conduct an evidentiary hearing. If, however, defendant again petitions the district court and pleads *factual* allegations indicating a need for an evidentiary hearing, then he should be given such a hearing.[1]

Affirmed.

---

1. In deciding whether or not to renew his petition, the defendant should recognize that it is not always in a defendant's best interest to seek to withdraw his guilty plea even if he believes that grounds exist for withdrawal. If defendant were to obtain permission to withdraw his guilty pleas, he would face trial on the reinstated original charges and, if convicted, would face the possibility of consecutive sentences and, therefore, of more time in prison than he now faces. *Alabama v. Smith*, —— U.S. ——, 109 S.Ct. 2201, 2205–06, 104 L.Ed.2d 865 (1989).