*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1727**

State of Minnesota,
Respondent,

vs.

Dale Allen Jones,
Appellant.

**Filed July 6, 2015
Affirmed
Hooten, Judge**

Dakota County District Court
File No. 19HA-CR-13-2286

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Haig Huynh, Assistant County Attorney, Melissa Rasmussen, Certified Student Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and

Reyes, Judge.

**HOOTEN**, Judge

Appellant asks this court to reverse the district court's refusal to allow him to withdraw his *Alford* plea, arguing that his plea lacked a proper factual basis and that the district court erred by denying his pre-sentencing motion to withdraw his plea. We affirm.

## FACTS

On July 18, 2013, the Dakota County Sheriff's Office began investigating the theft of iron railroad tie plates from a site owned by a railroad construction company. Because the company had suffered recurring thefts of tie plates at the site, it had installed a camera to surveil one of the piles of tie plates to combat future theft. The resulting recording from July 17 showed two individuals taking tie plates from the site and placing them in a vehicle registered to appellant Dale Allen Jones. Police officers obtained a search warrant for appellant's residence, which was near the site of the thefts. Upon executing the warrant, the police discovered several receipts from a scrap metal recycling facility. The officers spoke with appellant's mother at the residence, who identified her son and co-defendant Justin Ohde as the two individuals in the surveillance recording and said that she had seen them loading "railroad items" in a van the night before. Ohde arrived at the residence while the warrant was being executed and identified appellant and himself as the individuals in the surveillance recording. That same day, police visited the scrap metal recycling facility and recovered numerous tie plates that Ohde had sold earlier that morning.

Appellant was charged with aiding and abetting the theft of property valued over $1,000. On March 25, appellant entered an *Alford* plea to the charged theft offense. He signed a plea petition in which he agreed to enter a guilty plea to the theft charge and indicated that he would be seeking a downward departure at sentencing. At the plea hearing, appellant acknowledged on the record that he had read and signed the plea petition and that he was voluntarily choosing to waive all of his trial rights in order to plead guilty and seek a sentencing departure.

Both defense counsel and the prosecutor questioned appellant on the factual basis for his plea. When questioned by defense counsel, appellant acknowledged that he had read the complaint, and that he had seen the police report and photographs regarding his case. He admitted that on or around July 18, he and Ohde made multiple trips to a driveway near the railroad tracks to pick up loads of tie plates. Appellant elaborated on why he did so:

> DEFENSE COUNSEL: Okay. And you did it because he told you—
> APPELLANT: [Ohde] told me he had permission.
> DEFENSE COUNSEL: Okay. That's what he told you?
> APPELLANT: Yes.
> DEFENSE COUNSEL: Okay. And that's why you did it?
> APPELLANT: Yes.
> DEFENSE COUNSEL: And you intended to take those metal [sic] and sell it for money, correct?
> APPELLANT: Yeah. I mean, we usually take 25 percent of the money and we give it back to the person who gives us permission.
> DEFENSE COUNSEL: Okay. And that's what he told you too?
> APPELLANT: Yeah.

Appellant then acknowledged that the state would likely be calling employees of the railroad company, police officers, Ohde, and his mother to testify against him. Defense counsel finished by asking:

> DEFENSE COUNSEL: Okay. And now that if we look at all the evidence against you and if the prosecutor presents that to a jury, do you agree that there's a substantial likelihood that a reasonable jury will convict you . . . based on the allegations and the evidence against you in this case?
> APPELLANT: Yes.
> DEFENSE COUNSEL: Okay. And that's why you're pleading guilty today, is that correct?
> APPELLANT: Yes.

Appellant agreed that he was pleading guilty because he wanted to ask for a sentencing departure. When asked by defense counsel if this factual basis was sufficient, the district court took judicial notice of the complaint "to support the *Alford* plea."

The prosecutor also went over the evidence in the case with appellant. Appellant equivocated when asked whether he was familiar with the police reports and if he had had sufficient time to review them. The district court then directly questioned appellant on the issue, and appellant acknowledged that he had "already looked at" the police reports but had "no idea" whether he needed more time; eventually, appellant agreed that he was still ready to go forward with the plea. The prosecutor then had appellant again acknowledge the various pieces of evidence the state would be producing at trial. Appellant stated that he understood each piece of evidence and again agreed that there was a "substantial likelihood" that a jury would find him guilty of aiding and abetting Ohde of theft based on this evidence. The district court then accepted appellant's plea,

4

and Jones acknowledged the district court's admonition that it was "not going to let [him] withdraw it later."

At sentencing, appellant moved to withdraw his plea under Minn. R. Crim. P. 15.05, subd. 2. The basis for the motion was an affidavit from Ohde that had been recently obtained by appellant's counsel, in which Ohde stated that he lied to appellant by telling him that they had permission to pick up the tie plates. Appellant's counsel told the district court that he had been unable to meet with Ohde until recently because Ohde's counsel had prevented their meeting while Ohde was also being prosecuted for the theft. Appellant's counsel argued that if he had seen this statement from Ohde earlier, his advice to appellant would have been "a little bit different than it was before" because "his chance at trial might be better" with this evidence. In response, the prosecutor argued that the plea was voluntary, intelligent, and accurate, and that the Ohde affidavit was "nothing new," as appellant had already stated at the plea hearing that he was told by Ohde that they had permission to take the tie plates.

The district court denied appellant's motion to withdraw his plea. The district court summarized what had happened at the plea hearing, emphasizing that appellant had already placed on the record his allegation that Ohde represented that they had permission to take the tie plates, and further stressed that it had warned appellant that he would not be able to later withdraw. The district court then sentenced appellant to 18 months in prison, denying his request for a durational and dispositional downward departure. This appeal followed.

**D E C I S I O N**

**I.**

Appellant first challenges the accuracy of his *Alford* plea. While appellant did not raise this issue as a ground for withdrawal in his motion before the district court, "[a] defendant is free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate." *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). If the record demonstrates that a plea is invalid, the defendant must be allowed to withdraw his or her plea under the manifest injustice standard of Minn. R. Crim. P. 15.05, subd. 1. *See State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). A defendant challenging a guilty plea has the burden of showing that the plea was invalid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "Assessing the validity of a plea presents a question of law that we review de novo." *Id.*

A valid plea must be accurate, voluntary, and intelligent. *Id.* The requirement of accuracy "protects a defendant from pleading guilty to a more serious offense than that for which he could be convicted if he insisted on his right to trial." *Id.* "A proper factual basis must be established for a guilty plea to be accurate," and the district court has the responsibility to ensure that such proper factual basis is produced. *Theis*, 742 N.W.2d at 647, 648 (quotation omitted). A proper factual basis has been established when there are "sufficient facts on the record to support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). A plea will be set aside if a proper factual basis is lacking. *State v. Warren*, 419 N.W.2d 795, 798 (Minn. 1988).

6

Here, appellant entered an *Alford* plea to the theft charge. A defendant who pleads guilty through an *Alford* plea maintains his or her innocence, but concedes that there is sufficient evidence to support a verdict of guilty. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970); *see also State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977) (adopting the *Alford* plea procedure in Minnesota). *Alford* pleas allow district courts to "accept a plea of guilty by an accused even though the accused claims he is innocent if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered." *Goulette*, 258 N.W.2d at 760.

Thus, when a defendant enters an *Alford* plea, a "strong factual basis" must support the plea due to "the inherent conflict in pleading guilty while maintaining innocence." *Theis*, 742 N.W.2d at 648–49. For *Alford* pleas, the "better practice" is to have the factual basis supported with evidence discussed with the defendant at the plea hearing, be it through interrogation of the defendant as to his or her conduct and the evidence that would likely be presented at trial, introduction of documentary evidence or witness testimony at the plea hearing, or a stipulation by the parties to a fact statement in documents submitted to the court at the plea hearing. *Id.* at 649. In addition to a strong factual basis, "the court must be able to determine that the defendant, despite maintaining his innocence, agrees that [the] evidence the [s]tate is likely to offer at trial is sufficient to convict." *Id.* The "best practice" for ensuring this "critical" protection is to have the defendant, on the record at the plea hearing, specifically admit that the state's evidence

7

"is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty." *Id.*

Appellant argues that the factual basis adduced at the plea hearing was insufficient to establish the requisite intent element of the crime with which he was charged. Appellant was charged with aiding and abetting theft of items valued between $1,000 and $5,000, under Minn. Stat. §§ 609.52, subd. 2(a)(1) and .05, subd. 1 (2012). Under the aiding and abetting statute, the state was required to prove that appellant "knew that his alleged accomplice[] [was] going to commit a crime and that [the defendant] intended his presence or actions to further the commission of that crime." *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007); *see* Minn. Stat. § 609.05, subd. 1 (imposing criminal liability for defendant who "intentionally aid[ed] . . . the other to commit the crime"). Further, the theft statute required the state to prove that appellant aided Ohde in "intentionally and without claim of right tak[ing] . . . possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(a)(1).

Appellant claims that "the [s]tate did not summarize evidence, such as what Ohde would testify to at trial or some other statement Ohde had given, to establish that appellant intentionally aided Ohde in the felony theft." However, such direct evidence is not the only way with which the state could prove appellant's intent. As a state of mind, intent "generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000). For aiding and abetting liability, "[a] jury may infer the requisite state of mind

8

from a variety of facts, including presence at the scene of the crime, a close association with the principal offender before and after the crime, a lack of objection or surprise under the circumstances, and flight from the scene of the crime with the principal offender." *State v. Bahtuoh*, 840 N.W.2d 804, 810 (Minn. 2013).

The record of the plea hearing[1] shows that appellant's *Alford* plea is supported by a sufficient factual basis. At the plea hearing, defense counsel and the prosecutor both discussed with appellant the evidence that would be presented against him by the state at trial, and the district court further took judicial notice of the facts in the complaint to support the *Alford* plea. Appellant admitted that he and Ohde repeatedly drove his vehicle to private property and loaded the tie plates into his vehicle, and that he knew the metal would be recycled for monetary gain. Appellant acknowledged that the state would present receipts showing that the stolen tie plates had been sold to the recycling center. Appellant further acknowledged that the state would call railroad personnel to testify that they had not given appellant or Ohde permission to take the tie plates, and had in fact set up a surveillance system to combat theft of this property.

---

[1] In its brief, the state describes, in some detail, the content of photographs depicting the site of the alleged theft. But these photographs, as well the accompanying police reports, were not entered as exhibits at the plea hearing and therefore cannot be considered by this court on appeal in determining whether Jones's plea had sufficient factual support at the plea hearing. *See* Minn. R. Crim. P. 28.02, subd. 8 ("The record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any."). We remind parties and district courts that the "better practice" for supporting *Alford* pleas is to admit this type of evidence *into the record*, to ensure that such pleas are not "cavalierly accept[ed]" by district courts and to give this court a more complete record to review on appeal. *Goulette*, 258 N.W.2d at 761.

This factual basis was sufficient for the district court to conclude that there was a "*strong* probability" that appellant would be convicted, notwithstanding appellant's claims of innocence. *Theis*, 742 N.W.2d at 649. Even if appellant and Ohde testified at trial as to appellant's belief that the tie plates were being taken with the permission of the railroad, this would not negate the state's circumstantial evidence of intent, as a jury would necessarily have to "determine[] the credibility and weight given to the testimony of individual witnesses" and decide whether appellant truly believed that he and Ohde had permission to take the tie plates. *State v. Olhausen*, 681 N.W.2d 21, 26 (Minn. 2004). Because it is highly probable that the evidence acknowledged by appellant at the plea hearing would lead a jury to conclude that appellant knew that he and Ohde were taking the tie plates without the consent of the railroad, the factual basis adduced at the plea hearing sufficiently established the intent element of appellant's aiding and abetting offense. Because an adequate factual basis was established in the record to support appellant's *Alford* plea, we conclude that his plea was accurate and thus valid.

## II.

Appellant next argues that the district court abused its discretion by failing to allow him to withdraw his plea based upon the affidavit he obtained from Ohde. Because appellant made his plea withdrawal motion at the sentencing hearing, the district court could have, "[i]n its discretion," allowed plea withdrawal "if it [was] fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. A defendant does not have an absolute right to withdraw a plea before sentencing because such an absolute right "would undermine the integrity of the plea-taking process." *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989).

10

In considering whether it is fair and just to allow a defendant to withdraw a plea, the district court is required to consider two factors: "(1) the reasons a defendant advances to support withdrawal and (2) prejudice granting the motion would cause the [s]tate given reliance on the plea." *Raleigh*, 778 N.W.2d at 97. The defendant bears the burden of advancing reasons to support withdrawal, while the state bears the burden of showing resulting prejudice. *Id.* We review the district court's denial of a plea withdrawal motion under the fair-and-just standard for an abuse of discretion, reversing "only in the rare case." *Kim*, 434 N.W.2d at 266.

Appellant argues that he supplied the district court with a fair and just reason for withdrawing his plea: that the affidavit appellant's counsel was able to obtain from Ohde sufficiently buttressed appellant's claim that he thought the two had permission to take the tie plates from the railroad so as to raise "a factual question as to whether appellant actually committed the crimes." Essentially, appellant appears to be arguing that the affidavit from Ohde, which his lawyer was only able to obtain after the plea hearing, sufficiently bolsters his defense such that he would have chosen to proceed to trial rather than enter the *Alford* plea if he had had the statement earlier.

Appellant's argument is unavailing. While he contends that this newly-obtained evidence "establish[es] a fair and just reason" to allow for withdrawal of his plea, he does not show how the district court abused its discretion in concluding otherwise. The record shows that appellant's counsel was aware of appellant's claim that he had permission to take the tie plates, as he elicited this information from appellant at the plea hearing. Although the Ohde affidavit corroborates appellant's version of events, it does not alter

11

appellant's version. The state had placed Ohde on its witness list and appellant acknowledged at the plea hearing that the state would likely call him. Further, in his *Alford* plea, appellant acknowledged that he understood all of the state's evidence and agreed that there was a substantial likelihood that a reasonable jury would convict him based on the allegation and evidence, and that that was why he was pleading guilty. Appellant agreed that conviction was likely, even though he maintained that he lacked the necessary criminal intent because Ohde had indicated that they had permission to take the tie plates. In entering his *Alford* plea, appellant gave up his right to litigate the intent issue, and the district court did not abuse its discretion by concluding that the affidavit was insufficient to allow him to withdraw his plea and proceed to trial.

Appellant also argues that the state's failure to show prejudice resulting from the plea withdrawal is further proof that the district court abused its discretion. Contrary to his assertion, the state was not required to prove prejudice for the district court to deny the plea withdrawal request here. "Even when there is no prejudice to the state, a district court may deny plea withdrawal under rule 15.05, subdivision 2, if the defendant fails to advance valid reasons why withdrawal is fair and just." *State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013), *review denied* (Minn. Dec. 31, 2013). The state's failure to assert prejudice did not preclude the district court from exercising its discretion to deny appellant's plea withdrawal motion given his lack of a valid reason for withdrawal.

This is not the "rare case" in which the district court abuses its discretion by denying plea withdrawal under Minn. R. Crim. P. 15.05, subd. 2. *Kim*, 434 N.W.2d at

Based on this record, we conclude that the district court did not abuse its discretion in denying appellant's motion to withdraw his *Alford* plea.

**Affirmed.**