*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0354**

State of Minnesota,
Respondent,

vs.

Robert James Tolbert,
Appellant.

**Filed December 21, 2015
Affirmed
Cleary, Chief Judge**

Olmsted County District Court
File No. 55-CR-13-5985

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Robert James Tolbert argues that he was denied his constitutional right to due process when the district court accepted his guilty pleas without first conducting a rule 20 mental-competency examination when there was sufficient doubt of competency to proceed. Because the district court did not err in weighing the evidence regarding appellant's competency, we affirm.

**FACTS**

On June 18, 2013, appellant was contacted by an individual who was working as a confidential reliable informant (CRI) for the Rochester Police Department. Appellant arranged for the CRI to meet with another person who would sell heroin to the CRI. Appellant facilitated the sale in hopes of receiving a small amount of heroin in exchange for arranging the deal. On September 12, 2013, appellant was charged with second-degree controlled-substance sale in violation of Minn. Stat. § 152.022, subd. 1(6)(i) (2012). The complaint was amended on March 24, 2014, to add one count of aiding and abetting a third-degree controlled-substance sale in violation of Minn. Stat. § 152.023, subd. 1(1) (2012).

In a hearing on March 18, 2014, defense counsel informed the district court that appellant was absent because he was hospitalized due to psychiatric issues. On March 24, 2014, appellant pleaded guilty to both charges against him with the understanding that the district court would withhold entry of judgment and postpone the

sentencing hearing until after the resolution of a case pending against appellant's codefendant—the person who sold heroin to the CRI in this case. If appellant cooperated with the presentence investigation, followed all conditions of release, remained law abiding, and testified truthfully at the trial of his codefendant regarding the alleged drug sale, the district court would find appellant guilty of the lesser third-degree controlled-substance sale violation at sentencing.

Prior to accepting appellant's plea, the court asked appellant a series of questions to ensure that appellant understood the terms and conditions of the plea agreement. The district court asked appellant if he was presently thinking clearly, to which appellant responded that he was. The court asked appellant if he was under the influence of medication, alcohol, drugs, or anything else that would impair his judgment, to which appellant responded in the negative. The court noted appellant's recent hospitalization for mental health issues and asked if he was taking any medication. Appellant responded that he was taking medication, but because he needed to be able to focus on the proceedings he took it at night to avoid falling asleep during the day. The district court again asked if appellant's judgment was impaired on that day due to the medication, and appellant responded that it was not. The court then asked appellant about his mental health:

> THE COURT: All right. Well how about your mental health
> condition, Mr. Tolbert. Is it under sufficient control here
> today such that you think you're able to make good decisions
> and think clearly about this?
> THE DEFENDANT: Yes, sir.

> THE COURT: Okay. All right. Do you have any concern about that, Mr. Tolbert, about whether this is an appropriate time, whether you've got the ability right now to be making important decisions?
> THE DEFENDANT: I think I can make -- I can make -- I understand.
> THE COURT: Okay. You think you can make important decisions and make them well at this time; is that correct?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. All right.

The district court then thoroughly explained to appellant the rights he was giving up by pleading guilty and the risk that a subsequent presentence investigation report (PSI) might show his criminal history score to be higher than the parties previously understood. Appellant responded coherently to questions posed during the factual examination at the plea hearing. Neither defense counsel nor the prosecution made a motion challenging competency.

During the sentencing hearing, defense counsel informed the court that appellant suffers from psychiatric issues and that, specifically, appellant is on disability for an anxiety disorder and schizophrenia. In arguing for a downward departure, defense counsel noted that appellant, "while certainly responsible for his behavior, does have some diminished capacities here. The PSI makes it clear that he is functionally illiterate, and he has psychiatric diagnoses that are sufficient to put him on disability." The PSI also indicated that appellant suffers from depression and in March 2014—at about the time he entered guilty pleas—appellant attempted suicide and was hospitalized for

4

several days.[1]  Appellant addressed the district court during the sentencing hearing and described some of his personal troubles.

At sentencing, the district court adjudicated appellant guilty of the third-degree charge pursuant to the parties' plea agreement and sentenced appellant to 44 months—a "bottom of the box" sentence, considering his criminal history score.  The court did not enter judgment on the second-degree charge.  Appellant then filed this direct appeal from the judgment.

## DECISION

Respondent disputes whether appellant can seek to withdraw a guilty plea in a direct appeal.  "A defendant who wishes to overturn a guilty plea may file a petition for postconviction relief under Minnesota Statutes section 590.01 (2012), move to withdraw the plea under Rule 15.05 of the Minnesota Rules of Criminal Procedure, or seek withdrawal on a direct appeal from the judgment of conviction."  *State v. Miller*, 849 N.W.2d 94, 97 (Minn. App. 2014).  Appellant's direct appeal is properly before this court.

Appellant argues that he should be allowed to withdraw his guilty pleas because the district court did not conduct a rule 20 mental-competency examination, even though sufficient doubt of appellant's competency existed when he entered the pleas, and this doubt increased by the time he was sentenced.  "A defendant has a due process right not

---

[1] We refer to confidential information found in the PSI only where appellant has already made that information a matter of public record via briefing and statements in public hearings.

5

to be tried or convicted of a criminal charge if he or she is legally incompetent." *Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011). "A defendant is incompetent and must not plead, be tried, or be sentenced if the defendant lacks ability to: (a) rationally consult with counsel; or (b) understand the proceedings or participate in the defense due to mental illness or deficiency." Minn. R. Crim. P. 20.01, subd. 2. It does not fall solely to the defendant to protect his or her right to due process. "If the prosecutor, defense counsel, or the court, at any time, doubts the defendant's competency, the prosecutor or defense counsel must make a motion challenging competency, or the court on its initiative must raise the issue." Minn. R. Crim. P. 20.01, subd. 3. "[T]hroughout the course of criminal proceedings a trial judge must be vigilant in ensuring that the defendant is competent to stand trial and that, when a sufficient doubt of the defendant's competence arises, he must observe procedures adequate to ensure the defendant's competency." *State v. Bauer*, 310 Minn. 103, 114, 245 N.W.2d 848, 854 (1976).

This court reviews the validity of a plea de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "Manifest injustice occurs if a guilty plea is not accurate, voluntary, and intelligent . . . ." *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). Requiring accuracy "protect[s] the defendant from pleading guilty to a more serious offense than he could properly be convicted of at trial." *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). Requiring voluntariness "helps insure that the defendant does not plead guilty because of any improper pressures or inducements." *Id.* And requiring a "knowing and

understanding[ ]" plea helps "insure that the defendant understands the charges, the rights being waived and the consequences of the guilty plea." *Id.*

In reviewing whether a district court observed adequate procedures to ensure an appellant's competency, this court does not determine whether an appellant was competent to stand trial, but only whether the district court should have conducted further inquiry into an appellant's competence. *Bauer*, 310 Minn. at 108, 245 N.W.2d at 852. There is no precise test to determine whether the district court was sufficiently vigilant in ensuring an appellant's competency. *Bonga*, 797 N.W.2d at 719. The United States Supreme Court has "purposefully avoided setting a standard for the nature or quantum of evidence that would establish a reason to doubt a defendant's competency to proceed." *Id.* (quotations omitted). Factors that are relevant in determining whether a district court should make further inquiry into an appellant's competence include: "defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Id.* Yet not all of the factors must be considered; just one of the factors may be sufficient on its own in some cases. *Bauer,* 310 Minn. at 116, 245 N.W.2d at 855. The question of when a court must further inquire "is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908 (1975)).

In this case, the district court made a thorough effort to ascertain appellant's competence. When appellant was absent from his March 18, 2014 hearing, the district court asked defense counsel about appellant's absence. Based on its conversation with

7

defense counsel, the district court understood that appellant's "emotional state may be volatile," but that appellant did not have a physical condition that would prevent him from leaving the hospital to appear in court within a reasonable time. At the plea hearing on March 24, 2014, the district court questioned appellant as to his ability to think clearly that day and understand the proceedings. The district court mentioned appellant's hospitalization, though it did not ask appellant questions that would elicit information regarding the seriousness of appellant's condition. The judge asked appellant, "I was told last week that you were hospitalized with some mental health issues; is that right?" Appellant responded affirmatively, and the district court asked appellant if he was taking prescription medications. The district court asked several questions about whether appellant's medication impaired his judgment. The court also asked about appellant's mental condition, generally, and if appellant felt that his condition was "under sufficient control" so that appellant could think clearly and make important decisions. The record shows that throughout the hearing, appellant answered questions from the court, the prosecuting attorney, and his own attorney without any indication that he was unable to understand the proceedings or participate in them rationally.

By the time of the sentencing hearing, a PSI had been completed which included statements appellant made to an investigator about appellant's mental health. The PSI reported that appellant had attempted suicide in March 2014, at about the same time he entered the plea. A suicide attempt can be "evidence of irrational behavior—an act which suggests a rather substantial degree of mental instability." *Bonga*, 797 N.W.2d at

720 (quotation omitted). In *Bonga*, the defendant had attempted suicide the day before he pleaded guilty, yet the court found him competent. 797 N.W.2d 714, 720. The defendant in *Bonga* told the district court "he had never been hospitalized or treated for a psychiatric condition," and the postconviction court made extensive observations of its own, both before and during the guilty plea, that convinced it that the defendant was acting normally under the circumstances. *Id.* at 720.

Here, the district court knew appellant had been hospitalized and had been treated for a psychiatric condition. In addition to raising appellant's mental condition at the pretrial hearing and at the plea hearing, defense counsel had also informed the district court of appellant's schizophrenia diagnosis at appellant's initial appearance in September 2013. Defense counsel again raised appellant's anxiety disorder and schizophrenia at the sentencing hearing. The district court could have inquired more thoroughly at the plea hearing into the reasons for appellant's hospitalization given the immediacy of that event. On balance, however, the district court made sufficient inquiry into appellant's competency. The record indicates that the district court questioned appellant extensively and had ample time to observe his demeanor. Appellant answered the district court's questions with apparent lucidness, he was able to communicate with defense counsel, and he made what appears to be a rational decision to accept a lesser conviction and sentence through a plea deal. Further, neither party raised the issue of competency during proceedings. A district court has an obligation to raise the issue sua sponte if it doubts a defendant's competency, but defense counsel has the greatest

9

opportunity to observe a defendant and form such a doubt as to competency. Here, though defense counsel raised the issue of appellant's mental health on a number of occasions, counsel never made a motion challenging competency or otherwise suggested that appellant lacked the ability to rationally consult with counsel, understand the proceedings, or participate in his defense.

Despite the fact that appellant had been hospitalized, was treated for psychiatric conditions, and allegedly attempted to commit suicide, other evidence shows that the district court did not err when it declined to make further inquiry into appellant's competency.

**Affirmed.**