*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0025**
**A23-0027**

State of Minnesota,
Respondent,

vs.

Eric Dow Johnson,
Appellant.

**Filed January 22, 2024**
**Affirmed**
**Segal, Chief Judge**

Hennepin County District Court
File Nos. 27-CR-20-26368, 27-CR-20-26369

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Andrew C. Wilson, Wilson & Clas, Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Segal, Chief Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

In this consolidated appeal, appellant argues that the district court erred in denying his motions to withdraw his guilty pleas. He maintains that the pleas were induced by an

illusory promise, a promise that the county attorney did not have the authority to fulfill, and that the pleas were therefore not voluntary. We affirm the district court's denial because there was no illusory promise, the terms of the plea agreement were clear, and appellant's pleas were voluntary.

**FACTS**

In December 2020, respondent State of Minnesota charged appellant Eric Dow Johnson in two separate complaints, both venued in Hennepin County, with committing third-degree criminal sexual conduct against two different victims. After the charges were filed, Johnson's biological daughter, R.J., reported that Johnson had sexually assaulted her in his home in Meeker County sometime between 2004 and 2006. The daughter of a woman Johnson had dated, A.A., also reported, after the Hennepin County cases were filed, that she had been sexually assaulted by Johnson at his Meeker County home sometime between 2003 and 2005. The state sought to introduce the allegations made by R.J. and A.A. as *Spreigl* evidence in the Hennepin County cases to prove a common scheme or plan. *See State v. Spreigl*, 139 N.W.2d 167, 169 (Minn. 1965) (allowing the admission of evidence of other crimes to prove motive, intent, absence of mistake, identity, or common scheme or plan).

The Hennepin County cases were eventually resolved by a plea agreement on the day trial was to begin in May 2022. During the plea negotiations, Johnson expressed a desire to try to resolve the potential criminal cases in Meeker County involving R.J. and A.A. The Hennepin County prosecutor communicated with the Meeker County Attorney's Office (MCAO) to see if a resolution of the Meeker matters was possible. An agreement

2

was reached regarding A.A.'s case, but there was no commitment made regarding the filing of charges in R.J.'s case.

The terms of the plea agreement called for concurrent sentences of 70 months and 57 months, along with other conditions. The plea agreement also included a promise by the MCAO that the state would not charge the alleged offense involving A.A. but that no such understanding had been reached concerning R.J.'s case. The terms provided that, if an agreement was reached before sentencing not to charge the case involving R.J., then Johnson would agree to serve an additional 20 months such that his longer sentence would be increased from 70 months to 90 months. Johnson's counsel summarized this part of the agreement at the plea hearing as follows:

> As a part of this agreement, the State and the Meeker County Attorney's Office agree not to charge Mr. Johnson with that alleged *Spreigl* incident [involving A.A.]. . . . [A]nd that's the sum and total of our agreement so far in this case . . . .

> . . . .

> The other thing that may change between now and sentencing is the following: There's one other *Spreigl* incident that has been uncharged. This is all part of [the district court]'s previous order that was not admitted in this case. And that is involving a *Spreigl* victim by the name of—or by the initials of R.J. and that time range was from 2004 through 2006.

> At this point, we do not have an agreement about that case not being charged. However, between now and sentencing, if the parties do come to an agreement where the State and Meeker County will not charge Mr. Johnson with that alleged *Spreigl* incident, then, as a benefit to not having that one charged and an agreement not to have it charged, the time that Mr. Johnson would serve in [the file with the 70-month sentence] goes up to 90 months, concurrent, instead.

3

> So, if they agreed not to charge the fourth incident, it's an additional 20 months as a benefit of the bargain for that to a 90-month concurrent sentence. . . . If it remains as it is, where A.A. is not charged but R.J.—there's no agreement on her not charging, then we stay at the 70 months that we've agreed to today. And that's the agreement of the parties.

Johnson acknowledged that he understood and agreed to the terms his attorney had summarized. Johnson then pleaded guilty in the two Hennepin County cases, and the court accepted his pleas.

Before sentencing, Johnson moved to withdraw his pleas, arguing duress and that the nature of the terms with the two Meeker County matters rendered the plea involuntary. The district court issued its ruling on the record, denying the motions. The district court found no duress because of the amount of time that the cases had been pending, the fact that the plea agreement was reached on the day of the third scheduled trial date, and the fact that Johnson had been accorded a significant amount of time on the day of trial to try to resolve all four matters as he had requested.

The district court also observed that the terms of the agreement were clearly stated at the plea hearing, that Johnson showed no hesitation at the plea hearing in agreeing to the terms, and that the 70-month and 90-month possible sentences were both within the guidelines. Finally, the district court concluded that the state would suffer prejudice by reason of the impact on the victims if they were to be subpoenaed again to testify after having been told their cases were resolved. Because no agreement had been reached concerning R.J.'s case as of the sentencing hearing date, the district court sentenced Johnson to the agreed-upon 70 and 57 months, to be served concurrently.

**DECISION**

Johnson's argument on appeal focuses on his claim that the plea agreement contained an illusory promise that he alleges was outside the powers of the Hennepin County Attorney's Office (HCAO) to fulfill. He argues that his guilty pleas were thus not voluntary and that the district court's denial of his motions to withdraw those pleas must be reversed.

Appellate courts review "a district court's decision to deny a withdrawal motion for abuse of discretion, reversing only in the rare case." *State v. Raleigh*, 778 N.W.2d 90, 97 (Minn. 2010) (quotation omitted); *see also Kim v. State*, 434 N.W.2d 263, 265-66 (Minn. 1989) (rejecting more lenient approach to presentence guilty plea withdrawals). "Assessing the validity of a plea presents a question of law that we review de novo." *Raleigh*, 778 N.W.2d at 94.

**I.    Johnson preserved his argument for appeal.**

Before reaching the merits of Johnson's argument, we first address the threshold question of whether Johnson preserved his argument for appeal. The state asserts that Johnson failed to preserve the argument because he never asserted the issue before the district court that he is now making on appeal—that the HCAO lacked "authority" or "jurisdiction" to enter into a plea agreement that bound another county attorney's office. *See, e.g., Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that appellate courts generally address only those questions previously raised before the district court). But a defendant can seek to challenge the validity of a guilty plea for the first time on direct appeal. *See Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989) (stating a defendant is free

5

to appeal from a judgment of conviction and argue that the record at the time of the plea was inadequate); *State v. Johnson*, 867 N.W.2d 210, 214 (Minn. App. 2015) (citing *State v. Iverson*, 664 N.W.2d 346, 350 (Minn. 2003)), *rev. denied* (Minn. Sept. 29, 2015).

In addition, we note that Johnson did argue before the district court that the plea agreement contained a promise that the HCAO might not be able to fulfill.  In support of Johnson's claim of duress and confusion, Johnson's counsel posited that Johnson did not know, because of "the unique nature of the plea whether or not [the] promise [concerning the Meeker County cases] could or could not be fulfilled in the situation."  We thus reject the state's argument that the issue was not preserved for appeal.

## II. The district court did not abuse its discretion in denying Johnson's motions to withdraw his guilty pleas.

Johnson's motions to withdraw his guilty pleas were made before he was sentenced. Johnson thus relies on the "fair and just" standard for plea withdrawal on appeal, which is a less demanding standard than the "manifest injustice" standard that applies to plea-withdrawal motions made after sentencing.  *See* Minn. R. Crim. P. 15.05, subds. 1, 2; *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007).  Under the fair-and-just standard, "[t]he court must give due consideration to the reasons advanced by the defendant in support of the motion and any prejudice the granting of the motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea."  Minn. R. Crim. P. 15.05, subd. 2. The "defendant bears the burden of advancing reasons to support withdrawal" and "[t]he State bears the burden of showing prejudice" from allowing a withdrawal.  *Raleigh*, 778 N.W.2d at 97.

6

Johnson argues that he satisfied his burden under the fair-and-just standard because the terms of the plea agreement contained a promise that the MCAO would not charge A.A.'s case and the possibility that R.J.'s case would also not be charged. Johnson maintains that the HCAO had no authority to enforce these promises concerning the MCAO and that the plea agreement thus contained an illusory promise and inducement for Johnson to plead guilty. *See State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) (stating an unfulfillable promise may be grounds for granting a plea withdrawal). We are not persuaded.

First, the terms of the plea agreement have, in fact, been fulfilled. The MCAO has not charged Johnson with a sexual-assault case involving A.A. And Johnson's argument that the plea agreement was invalid because it was premised on a promise made by a county attorney from a different county is unsupported by any authority. As the district court noted, it was Johnson who wanted to explore resolving the potential Meeker County cases as part of the plea negotiations. Moreover, Johnson is careful to make clear that he is not suggesting that the HCAO misrepresented the promise made by the MCAO regarding the alleged offense involving A.A. And, if the MCAO did charge Johnson with the alleged A.A. offense in violation of the terms of the plea agreement, avenues of relief would be available to Johnson to seek relief at such time.

Second, as to the alleged offense involving R.J., Johnson's own counsel made clear to him at the plea hearing that no agreement had been reached. Johnson's counsel further advised him that, if the MCAO were to agree—before sentencing in the Hennepin County cases—not to charge the alleged offense involving R.J., Johnson's sentence would be

7

increased by 20 months in exchange. The condition was only effective up to the date of sentencing. There was no agreement for any change, conditional or otherwise, post-sentencing. Johnson stated that he understood and still agreed to proceed with his guilty pleas. *See Schwerm v. State*, 181 N.W.2d 867, 868 (Minn. 1970) (holding nonfulfillment of a defendant's "unwarranted hope" is not sufficient for plea withdrawal).

Finally, we reject Johnson's argument that the state failed to satisfy its burden to show that prejudice would result if Johnson withdrew his plea. While it is true that the state candidly acknowledged that a few months' delay would not cause the state's case to "fall apart," the state nevertheless established that some level of prejudice would result. The district court found that "when there are witnesses that are told the trial is done and will not happen, and then they're told now you're subpoenaed again to testify in that same trial, that does, in its nature, prejudice the State."

In sum, we conclude that the district court balanced the considerations required under the fair-and-just standard, and we discern no abuse of discretion.

**Affirmed.**