*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1111**

State of Minnesota,
Respondent,

vs.

Matthew Michael Lewis,
Appellant.

**Filed May 19, 2025**
**Affirmed**
**Wheelock, Judge**

Mower County District Court
File No. 50-CR-23-1594

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Michelle M. King, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Max B. Kittel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Wheelock, Judge; and Jesson, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WHEELOCK**, Judge

In this direct appeal from his sentence for second-degree sale of a controlled substance, appellant argues that the district court abused its discretion by denying his motion for a downward dispositional departure or, in the alternative, that he should be permitted to withdraw his guilty plea. We affirm.

## FACTS

On November 8, 2022, appellant Matthew Michael Lewis sold 6.826 grams of methamphetamine to a confidential, reliable informant, and on November 11, he sold 13.36 grams of the same substance to the same informant. Lewis made these sales roughly one month after he was released from prison, when he was on intensive supervised release. As a result of these sales, respondent State of Minnesota charged Lewis in August 2023 with first-, second-, and third-degree sale of a controlled substance pursuant to Minn. Stat. §§ 152.021, subd. 1, .022, subd. 1, .023, subd. 1 (2022).

In October 2023, Lewis entered a guilty plea pursuant to an agreement in which the state agreed to dismiss the first- and third-degree charges and "stay silent" on Lewis's motions for furlough and dispositional departure. Lewis pleaded guilty to the second-degree charge and agreed to complete treatment, follow all aftercare recommendations, abstain from use of all substances, cooperate with a presentence investigation, and not violate any pretrial release conditions. At the plea hearing, Lewis requested a furlough to inpatient treatment at Minnesota Adult & Teen Challenge (Teen Challenge) and the state remained silent per the plea agreement. The district court denied

the requested relief, however, saying, "This isn't a possession case. This is a, I believe, the presumptive commit starting at the first degree. I don't find a sufficient basis to grant a furlough." The district court then continued the proceedings for sentencing.

Lewis later received notice that a bed at Teen Challenge was available, and he submitted another motion for a furlough to inpatient treatment at the end of November 2023. At the motion hearing, the state again remained silent per the plea agreement. Lewis's attorney stated, "Mr. Lewis is well aware that he's facing a commitment to prison." In support of his motion for furlough, Lewis explained that, while in jail, he had completed an anger-management program, worked "on the Decision Points program," attended AA and NA meetings, completed the "Purpose Driven Life program," attended Bible study, and demonstrated his dedication to rehabilitation. Lewis also expressed that he wanted "to do the full eighteen-month program" because long-term treatment had the best hope of making a difference to change his pattern of addiction. He stated, "I know I'm facing a lot of time, but it was willingly—like, this plea agreement was my design, to throw myself at the mercy of the courts and have the opportunity to show them that I can do better." The district court granted his motion, and Lewis was transferred to inpatient treatment at Teen Challenge. Lewis completed the initial inpatient treatment on January 4, 2024, and remained in treatment programming until sentencing.

Prior to sentencing, Lewis moved for a downward dispositional departure to probation. At the sentencing hearing, Lewis argued that he was particularly amenable to probation because he completed extensive programming, was admitted to long-term treatment at Teen Challenge, received weekly treatment for his mental-health and

3

substance-use disorders, volunteered in multiple areas, participated in the "Big Brother" program to support people in the inpatient treatment program, and participated in choir and yoga. Lewis explained that he planned to complete a second long-term program at the Teen Challenge Leadership Institute, during which he would be trained in ministry and become employed as a coach at Teen Challenge.

The program manager at Teen Challenge testified on Lewis's behalf at the hearing, affirming that Lewis participates in all of the activities listed above. He explained that Lewis has submitted every assignment on time, engages with the courses, volunteers "much more" than is required, and has no behavioral issues and that, therefore, he was interested in hiring Lewis as a recovery coach and minister for the program. During his allocution, Lewis asserted that he understands addiction and the severity of his actions, that he has "a community that relies on [him] now, just as much as [he] rel[ies] on them," and that he feels called to stay in the community and "restore the things that [he] helped break down." When asked for its position on Lewis's motion, the state remained silent per the plea agreement.

The district court explained that it was struggling with its decision on the motion because Lewis was doing so well in his recovery, and it stated that "if this was a possession offense that's all I would need to hear, probably." The district court then pointed out that the offense conduct involved multiple sales to an informant only a month after Lewis had been released from prison and while he was on intensive supervised release, and it emphasized the community impact of controlled-substance-sale crimes. The district court

4

ultimately denied Lewis's dispositional departure motion, stating, "The presumption is that we follow the guidelines. I do not find sufficient basis to deviate from that presumption."

The state requested that the district court sentence Lewis to 111 months in prison, a midrange sentence consistent with the presentence-investigation report's recommendation. Lewis requested that the district court sentence him to 95 months, the bottom of the presumptive range, based on the arguments in support of his departure motion. The district court exercised its discretion and sentenced Lewis to 95 months in prison. In doing so, it stated that, although Lewis had a criminal-history score of seven and a three-month custody enhancement would apply in this case, "I do agree with your counsel that, based upon what you've shown and the progress you've made, that a bottom of the box is appropriate, so I am going to sentence [you] to the bottom of the box."

Lewis appeals.

## DECISION

Lewis makes two arguments on appeal. He first argues that the district court abused its discretion by denying his motion for a downward dispositional departure. He next argues that, if we conclude that the district court did not abuse its discretion, he should be allowed to withdraw his guilty plea.[1] We address each argument in turn.

---

[1] Lewis submitted a pro se supplemental brief that contains no legal argument; rather, he expressed his desire to provide "context to the appeal" and explained that he has continued his recovery while incarcerated. Although we commend his progress in treatment, we do not consider evidence not presented to the district court. *See* Minn. R. Civ. App. P. 110.01. Therefore, we do not address his supplemental brief.

**I. The district court did not abuse its discretion by denying Lewis's motion for a downward dispositional departure.**

Lewis argues that the district court abused its discretion in two ways: it used offense-related factors, not offender-related factors, when considering his motion, and it erroneously applied the law when it stated that it would have granted the motion but for the fact that Lewis was convicted of selling controlled substances.[2] The state asserts that the district court did not abuse its discretion because it was permitted to consider both offense- and offender-related factors and because it did not misapply the law when it considered all the evidence and explained its decision to deny the motion by discussing the impact of sale offenses on the community.

A district court has broad discretion when imposing a sentence, and an appellate court will reverse the decision only if that discretion is abused. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). A district court generally does not abuse its discretion in imposing a sentence within the presumptive range identified in the Minnesota Sentencing Guidelines so long as it carefully considers the testimony and information before it on the departure motion. *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. App. 1985). "Because the guidelines' goal is to create uniformity in sentencing, departures are justified only in exceptional cases." *State v. Solberg*, 882 N.W.2d 618, 625 (Minn. 2016). "Only the rare case will merit reversal based on the district court's refusal to depart." *State v. Johnson*,

---

[2] Lewis argues that, because second-degree possession and sale crimes are charged and sentenced the same, the district court should not have considered them to be different. We conclude that this argument is a variation of his primary argument that the district court cannot consider offense-related factors when deciding a dispositional departure motion, and thus we do not separately address it.

831 N.W.2d 917, 925 (Minn. App. 2013) (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)), *rev. denied* (Minn. Sept. 17, 2013).

The Minnesota Sentencing Guidelines require that a district court impose the presumptive sentence "unless there exist identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (2022). In determining whether substantial and compelling circumstances support a dispositional departure, a district court may consider both offender-related and offense-related factors. *State v. Walker*, 913 N.W.2d 463, 468 (Minn. App. 2018). In terms of offender-related factors, a district court may grant a dispositional departure when a defendant is "particularly amenable," rather than "merely . . . amenable," to probation. *Soto*, 855 N.W.2d at 308. When evaluating a defendant's particular amenability "to individualized treatment in a probationary setting," district courts look to "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). A district court may also consider public-safety interests. *Soto*, 855 N.W.2d at 313.

Here, the district court considered all of the evidence presented, pointing to both offense- and offender-related factors, before deciding Lewis's departure motion. The district court received two letters of support from Lewis's treatment providers, heard testimony from a third provider and Lewis's statement of remorse, and explained that it "struggle[d]" with this decision because Lewis was doing well in his recovery. The record demonstrates that the district court considered the evidence and arguments relevant to Lewis's departure request. The district court ultimately denied Lewis's motion because of

7

the facts underlying the offense, including that it was a crime of sale and not possession of a controlled substance, that Lewis had been released from prison recently and was on intensive supervised release at the time of the offense, and that public-safety interests were implicated because sale crimes have an impact on the community. Because a district court may consider both offender- and offense-related factors when considering a motion for a dispositional departure and the district court here appropriately considered the record in rendering its decision, it did not abuse its discretion by denying Lewis's departure motion.

**II.      Lewis is not entitled to withdraw his guilty plea.**

Lewis argues that, if we conclude that the district court did not abuse its discretion by denying his motion for a downward dispositional departure, then he must be allowed to withdraw his guilty plea because it was involuntary and unintelligent for two reasons. First, he contends that his plea was involuntary because he was improperly induced by the district court's promise to consider his dispositional departure motion when in fact it had no intention of considering the motion. And second, Lewis contends that his plea was unintelligent because he was not aware of, as he describes it, the district court's "secret, mandatory minimum sentence" for a controlled-substance-sale offense. The state argues that the plea was valid because the state upheld its side of the agreement by remaining silent during Lewis's argument for a sentencing departure, the district court made no promises to Lewis in the plea agreement or at the plea hearing, and the record demonstrates that Lewis knew about the presumptive commitment to prison for his offense. We address each of Lewis's contentions in turn.

8

A defendant may challenge the constitutional validity of their guilty plea for the first time on direct appeal. *See Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "A defendant bears the burden of showing his plea was invalid." *Id.* "Assessing the validity of a plea presents a question of law that [appellate courts] review de novo." *Id.*

As to Lewis's first contention, for a plea to be voluntary, it must not be based on "any improper pressures or inducements." *Brown*, 449 N.W.2d at 182. "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). A guilty plea is improperly induced if the prosecutor makes a promise that "was unfulfillable from the start, such as . . . the promise of an illegal sentence." *Dikken v. State*, 896 N.W.2d 873, 877 (Minn. 2017).

Here, we determine that Lewis's plea was voluntary and not improperly induced because the state did not make any promises that were unfulfillable from the start. Lewis followed all the terms of the plea agreement—he pleaded guilty to second-degree sale, completed treatment, followed aftercare recommendations, did not use controlled substances, cooperated with the presentence-investigation process, and did not violate any terms of the pretrial release. For its part, the state also followed all the terms of the plea agreement—it dismissed the first- and third-degree charges and remained silent when the district court asked it about Lewis's motions for furlough and dispositional departure. The

9

plea agreement did not include any promises that the sentence imposed would be a departure or would otherwise require probation in lieu of imprisonment, and we do not see such a promise elsewhere in the record that could constitute an improper inducement. We also observe that the district court is not a party to a plea agreement because the agreement is between the state and the defendant. *See Johnson v. State*, 641 N.W.2d 912, 917 (Minn. 2002) ("[T]he separation of powers doctrine gives the state the authority to enter into plea agreements with a defendant."). Thus, there can be no unfulfilled promise from the district court. Because the state complied with the terms of the plea agreement and we do not observe anything else in the record that could constitute an improper inducement, we conclude that Lewis's guilty plea was voluntary.

As to Lewis's second contention, for a plea to be intelligent, the defendant must demonstrate that they understand the charges, the rights that they waive by entering their plea, and the consequences of their plea. *Williams v. State*, 760 N.W.2d 8, 15 (Minn. App. 2009), *rev. denied* (Minn. Apr. 21, 2009). The consequences of a plea include the maximum sentence that the district court could impose. *State v. Crump*, 826 N.W.2d 838, 841-42 (Minn. App. 2013), *rev. denied* (Minn. May 21, 2013). In other words, the defendant must have "knowledge that the sentence actually imposed could be imposed." *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004).

Here, we determine that Lewis's guilty plea was intelligent because the record demonstrates that Lewis understood that his conviction carried the possibility of commitment to prison. During the plea colloquy, the district court asked Lewis whether he understood that the charge he was pleading to "carries a maximum of twenty-five years

10

in prison" and Lewis responded, "Yes." Lewis also stated on the record at the hearing on his furlough motion, "I know I'm facing a lot of time," and he said he was throwing himself "at the mercy of the courts." These statements show that he understood that the sentence actually imposed could be imposed in his case. Furthermore, the record belies Lewis's contention that the district court imposed a "secret, mandatory minimum sentence"; to the contrary, the district court weighed the arguments for and against granting the departure and shared on the record that it struggled with the decision. Although the district court stated that "if this was a possession offense that's all I would need to hear, probably," this single statement does not evince a refusal to consider Lewis's motion because of the nature of the crime. We thus conclude that Lewis's guilty plea was intelligent.

Because the record demonstrates that Lewis entered his plea without improper inducement and with the knowledge that the offense carried a presumptive commitment to prison, the plea was voluntary and intelligent, and we conclude that Lewis is not entitled to withdrawal of his plea.

**Affirmed.**