STATE of Minnesota, Respondent,

v.

Larry TROTT, Appellant.

Nos. CX–82–852, C5–82–922.

Supreme Court of Minnesota.

Sept. 16, 1983.

Bradley G. Junkermeier, Willmar, and John E. Mack, New London, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Richard D. Hodsdon, Asst. Attys. Gen., St. Paul, Boyd A. Beccue and Ronald H. Schneider, Willmar, for respondent.

KELLEY, Justice.

Defendant was charged with assault in the second degree, Minn.Stat. § 609.222 (1982) (assault with a dangerous weapon), for beating his 6-year-old stepson with a board. After entry of a plea of guilty, the defendant was sentenced by the judge to an executed term of 21 months in prison. Following the sentencing, defendant retained different counsel and moved to withdraw his guilty plea alleging (a) his original at-

torney had promised him he would be placed on probation if he pleaded guilty, and (b) he had not understood that imprisonment was a reasonable possibility. The trial judge denied the motion. On appeal, petitioner urges he should be permitted to withdraw his plea because (a) the factual basis made at the time the plea was entered was inadequate to establish that the board, as used, was a dangerous weapon or that he inflicted all of the victim's injuries, and (b) his original attorney had not represented him effectively and defendant believed the trial judge thought he had no choice but to place defendant on probation. Alternatively, defendant seeks a remand for resentencing because the trial judge was unaware that, on his own motion, he could sentence defendant without regard to the mandatory minimum law if he found that substantial mitigating factors existed. We affirm.

The child beating out of which this prosecution arose occurred when the defendant, a large man weighing approximately 300 pounds, while enraged with the child's behavior, beat his 6-year-old stepson for up to 10 minutes with a board 3 feet long, 2 inches wide and ¾ of an inch thick. In response to a report that a child was being abused, Willmar police went to defendant's house where the officers literally caught the defendant in the act. Slightly over a month later, defendant, represented by his appointed attorney, signed and filed a petition to enter a guilty plea to the charge.[1] This petition states: "I have been told by my attorney and I understand * * * that the maximum penalty that the court could impose for this crime * * * is imprisonment for 5 years." The petition does not set forth any promises by the prosecutor. It also states: "No one—including my attorney, any policeman, prosecutor, judge, or any other person—has made any promises to me * * * in order to obtain a plea of

guilty from me." That same day, defendant appeared before the trial court and entered his plea of guilty. At the plea hearing, in open court, the trial court meticulously questioned the defendant to ascertain if he understood his rights. In particular, defendant was asked by the trial judge if he understood that the maximum sentence that he could receive was a $5,000 fine and/or up to 5 years in prison. He was specifically asked if anyone had made any promises to him. He stated they had not. When asked if there was any doubt about this, defendant said no. When asked to describe what happened, the defendant freely admitted that, while enraged at the child, he had struck the small boy with the board a number of times over a 10-minute time span. In questioning the defendant, the trial judge did everything that Minn.R. Crim.P. 15.01 and our cases mandate he do in order to insure the integrity of the plea. Thereafter, the court accepted the plea after receiving these assurances and ordered a pre-sentence investigation report, together with a psychological evaluation.

After receipt of these reports, the case came on for sentencing on May 10, 1982. At the sentencing hearing, the prosecutor acknowledged that he was, at first, under the impression that the presumptive sentence under the Sentencing Guidelines was a 21-month stayed sentence, and that was why he had, by memorandum, urged the court to make a dispositional departure. But he also stated that he had since learned the presumptive sentence was 21 months executed, because this was a Minn.Stat. § 609.11 offense—use of a dangerous weapon—carrying a mandatory executed term of 1 year and 1 day.[2] Defendant's attorney requested a stay of execution and treatment. The prosecutor argued that if departure were to be ordered in this case, it should be an upward departure. When the

---

1. The petition was identical with the one set forth in Appendix A to Rule 15 of the Minnesota Rules of Criminal Procedure (1982).

2. Under Minn.Stat. § 609.11, subds. 4 and 9 (1982), defendant was subject to a mandatory minimum term of 1 year and 1 day. Under Minnesota Sentencing Guidelines and Com-

mentary, II.E. (1982), when a defendant is convicted of such an offense, the presumptive sentence duration is "18 months or the duration of prison sentence provided in the appropriate cell of the Sentencing Guidelines Grid, whichever is longer."

trial judge asked if there was any dispute as to whether the offense involved the use of a dangerous weapon, the prosecutor said he did not think there was any dispute about that. Defendant's counsel and defendant said nothing. After a brief discussion of the appropriate sentence under the guidelines, the court stated: "The court finds that there are no substantial compelling reasons [to depart] from the presumptive sentence." He then imposed a 21-month executed sentence. At the sentencing hearing, defendant did not contend that he had believed under the guidelines the court could only give him a probationary sentence.

Approximately 2 weeks later, defendant, represented by different counsel, moved to withdraw his plea of guilty. In support of his motion, defendant testified his former attorney had promised him he would not have to go to prison and that, at the most, he might have to serve from 30 to 90 days of probationary jail time. He then also stated that he did not understand that he might have to go to prison and that when he said he did understand at the plea hearing, he was just giving the answers necessary in order to get his plea accepted by the court. He admitted to the judge that at the plea hearing he was aware that the statutory maximum was a possible 5 years imprisonment, but that he believed it had no application in his case. He claimed that his initial counsel never told him what the presumptive sentence was. Defendant's wife testified that defendant's first counsel had told him that generally in this type of case only probationary jail time was imposed.

In essence, defendant's former attorney admitted that he had not considered the effect of section 609.11 and that he thought the presumptive sentence in defendant's case was 21 months stayed. He further admitted that he had told defendant that probation was likely with some jail time, but he specifically denied giving defendant any promises that he would receive probation. The attorney further testified that he felt that the state's case against the defendant was strong, and he was doubtful whether he would have advised the defendant to stand trial even if he had known the correct presumptive sentence was 21-month executed sentence.

After the hearing, the trial judge found the former counsel had not promised defendant that he would receive probation and further found that defendant was aware he could receive up to 5 years in prison. Moreover, the court concluded defendant had failed to establish that he had been denied effective assistance of counsel.

■ 1. There are three basic prerequisites to a valid guilty plea: the plea must be accurate, voluntary and intelligent (i.e., knowingly and understandingly made). The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial. Other possible benefits of the accuracy requirement include assisting the court in determining whether the plea is intelligently entered and facilitating the rehabilitation of the defendant. The purpose of the voluntariness requirement is to insure that the defendant is not pleading guilty because of improper pressures. The purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea.

■ In this case, the defendant argues that the record made at the time he pleaded guilty did not contain an adequate factual basis. The usual way in which the factual basis requirement is satisfied is for the court to ask the defendant to express in his own words what happened. *State v. Hoaglund,* 307 Minn. 322, 240 N.W.2d 4 (1976). The defendant's statement usually will suggest questions to the court which then, with the assistance of counsel, can interrogate the defendant in further detail. Other ways of establishing a factual basis include testimony of witnesses and statements summarizing the evidence. *Kochevar v. State,* 281 N.W.2d 680 (Minn.1979); *State v. Goulette,* 258 N.W.2d 758 (Minn.1977). The

court should not accept the plea unless the record supports the conclusion that the defendant actually committed an offense at least as serious as the crime to which he is pleading guilty. *State v. Goulette,* 258 N.W.2d 758 (Minn.1977); *State v. Hoaglund,* 307 Minn. 322, 240 N.W.2d 4 (1976).

■ In this case, defendant admitted using a board approximately 3 feet long, and he also admitted that he beat the victim in a rage for from 5 to 10 minutes. The record also contains a copy of the complaint and defendant, by his plea of guilty, in effect judicially admitted the allegations contained in the complaint. The record also contains pictures of the victim's injuries taken at the hospital following the beating. Moreover, the trial judge carefully interrogated the defendant about the acts, and the defendant freely admitted that he had beaten the boy for up to 10 minutes.

■ We believe that this constituted a sufficient factual basis to support the plea. The record amply supports the conclusion that defendant used the board to beat the victim and that the victim's injuries were severe. Some things that are not ordinarily thought of as dangerous weapons become dangerous weapons if so used. *See, e.g., State v. Moyer,* 298 N.W.2d 768 (Minn.1980) (gasoline); *State v. Mings,* 289 N.W.2d 497 (Minn.1980) (boots); *State v. Meehan,* 280 N.W.2d 44 (Minn.1979) (automobile); *State v. Moss,* 269 N.W.2d 732 (Minn.1978) (scissors). Clearly, a board of this nature qualifies as a dangerous weapon if so used. Defendant judicially admitted that is how he used the board.

2. Next, the defendant contends he should be permitted to withdraw his guilty plea because he proved at the hearing on his motion to withdraw the plea that defense counsel had promised him probation at the time he entered the plea.

■ If the former counsel made an unqualified promise of probation, then defendant should be permitted to withdraw his plea on the ground that the promise is unfulfilled. *Kochevar v. State,* 281 N.W.2d 680 (Minn.1979). Here, defendant's claim that he was promised probation by defense counsel was negated by the petition he signed, by the statements he made at the time he entered his plea and by his former counsel's testimony at the hearing on defendant's motion. Clearly, therefore, the trial court was justified in finding that no such promise had been made. *Kochevar v. State,* 281 N.W.2d 680 (Minn.1979).

3. The defendant next contends that he should be allowed to withdraw his plea of guilty because he did not know about the terms of the mandatory minimum term law, Minn.Stat. § 609.11 (1982), or that under the Sentencing Guidelines the presumptive sentence was a 21-month executed sentence. Originally, both the prosecutor and the defendant's former attorney were unaware that section 609.11 and presumptive sentence under the guidelines would call for an executed sentence. At the time of the sentencing hearing, however, the prosecutor was well aware of that fact and made it known to the court. Prior to that time, under the impression that a stayed sentence would be appropriate, the prosecutor had filed a memorandum supporting a dispositional departure because of the egregiousness of the defendant's conduct. After discussion before the court in which counsel participated, neither the defendant nor his counsel at that time made any motion to continue the sentencing hearing or to withdraw the plea for a mistake. The defendant at all times knew that he was subject to possible imprisonment for up to 5 years. Under the facts of this case, including in particular the fact that defendant was literally caught in the act of beating this child with a large board, there was no disputing that the board was used as a dangerous weapon, and at the sentencing hearing both defendant and his counsel did not challenge that contention.

■ We are unwilling to hold that a defendant must be questioned by the trial court at the time he enters his guilty plea to insure that he understands what the presumptive sentence is under the Minnesota Sentencing Guidelines. In a substantial number of cases, the prosecution, the de-

fense counsel and the court must wait until after a pre-sentence investigation report has been prepared before they can accurately determine the presumptive sentence. This is true because frequently defendants do not know their own criminal history scores. It may well be better practice for the court to question the defendant to insure that he understands not only the maximum penalty to which he is subjecting himself but that there is a minimum executed sentence if section 609.11 is applicable.[3]

▮ In this case, there was overwhelming evidence to sustain a conviction based upon the plea. Defendant's first counsel conceded that the evidence against the defendant was strong and he would not likely have advised the defendant to stand trial. If the plea were withdrawn, this is not a case where the trier of fact would likely return a verdict for a lesser included offense providing for probation. The plea was meticulously taken by the trial judge. A withdrawal of the plea at a trial would most assuredly result in the same disposition.

▮ 4. Defendant finally claims that the trial court was not aware that on its own motion it could sentence the defendant without regard to the mandatory minimum term law if the court found that substantial mitigating factors existed. *See State v. Olson*, 325 N.W.2d 13 (Minn.1982). In the present case, the trial court specifically stated that it found no substantial compelling reasons for departing from the presumptive sentence, as the defendant at the time of the sentencing urged the court to do. This statement of the court indicates that he was, in fact, aware that he could have departed were proper circumstances presented.

Finding the defendant's contentions to be without merit, we affirm.

Affirmed.

**3.** *See* Minn.R.Crim.P. 15.01, which provides that the court, in accepting the plea, shall advise a defendant if a minimum sentence is required by statute, in which case the court must sentence to imprisonment for the statutory

AMDAHL, Chief Justice (dissenting).

I respectfully dissent.

The record establishes that it was not until the day of sentencing that the court, the prosecutor, and defense counsel became aware that a mandatory minimum executed 21-month sentence was the required sentence. None of them was aware at the time of the plea of the existence of such a fact and all of them believed that the presumptive sentence was 21 months stayed.

The record also establishes that at the time he entered his plea, the defendant knew that he could be sentenced to a maximum term of 5 years and that he had been told by his counsel that probation was likely and that he had not been informed that the mandatory minimum law was applicable and that it mandated execution of the sentence.

Under such circumstances, I cannot agree that his plea was intelligently entered and would hold that he should be permitted to withdraw his guilty plea and stand trial, whether or not it is true, as the majority opinion indicates, that "a trial would most assuredly result in the same disposition."

SCOTT, Justice (dissenting).

I join in the dissent of Chief Justice Amdahl.

minimum sentence. This was a recent amendment to the Minnesota Rules of Criminal Procedure and was effective on August 1, 1983. It was not in effect at the time the defendant's sentence was imposed.