*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1974**

State of Minnesota,
Respondent,

vs.

Moses Gum Benjamin,
Appellant.

**Filed December 22, 2014
Reversed and remanded
Schellhas, Judge**

Olmsted County District Court
File No. 55-CR-12-6676

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County
Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica Surges Shacka,
Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith,

Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

        Because appellant did not acknowledge on the record that the evidence is

sufficient for a jury, applying a reasonable-doubt standard, to find him guilty, and

because the record does not reflect that the district court independently concluded that a strong probability exists that appellant would be found guilty of the charge of second-degree assault with a dangerous weapon, we reverse appellant's conviction and remand for further proceedings.

## FACTS

In response to a dispatched report of assault, police arrived at F.A.A.'s residence where F.A.A. told them that appellant Moses Gum Benjamin entered her residence without her consent, argued with her, and refused to leave without his children. Benjamin did not reside with F.A.A. but is the father of her children. F.A.A. reported that Benjamin picked up a large kitchen knife and stated, "I can finish this right now. I'm serious. I will finish this right now." F.A.A. also reported that Benjamin walked toward her until his chest was touching her chest and his hand in which he held the knife was touching her. When a ringing telephone distracted Benjamin, F.A.A. ran out of the house with the children. Respondent State of Minnesota charged Benjamin with three counts of first-degree burglary, one count of second-degree assault with a dangerous weapon, one count of terroristic threats, and one count of domestic assault.

At a plea hearing, Benjamin waived his right to a trial and entered an *Alford* plea to the charge of second-degree assault with a dangerous weapon in exchange for dismissal of the other charges. Benjamin affirmed that he was entering his plea freely and voluntarily, that he was given enough time to talk with his attorney, and that he understood that his plea could result in immigration consequences. While maintaining his innocence, Benjamin affirmed that he was accepting the state's plea offer because it

would result in a better outcome for him than was likely if the case was taken to trial. The prosecutor questioned Benjamin about the factual basis for the *Alford* plea as follows:

> THE PROSECUTOR: Mr. Benjamin, you understand that the police reports include information that [F.A.A.] reported to the police?
> BENJAMIN: I understand. But there's a lot of them are not correct.
> THE PROSECUTOR: That you disagree with that?
> BENJAMIN: Yeah, right.
> THE PROSECUTOR: But among the things she told the police is that you did not have her consent to come over to the house?
> BENJAMIN: Right.
> THE PROSECUTOR: And you understand that entering without consent and committing the assault that you're alleged to have committed would constitute burglary in the first degree?
> BENJAMIN: Right.
> THE PROSECUTOR: And if [F.A.A.] testified at trial consistent with the report that she gave to the police, there's a substantial likelihood a jury would find you guilty of first degree burglary?
> BENJAMIN: Right.
> THE PROSECUTOR: And you also—you mentioned a couple times that she had also reported that there was a knife involved?
> BENJAMIN: There was no knife. That was made out, sir.
> THE PROSECUTOR: You understand that's what she reported to the police?
> BENJAMIN: Right.
> THE PROSECUTOR: And that it would be enough evidence that a jury *could* convict you of what you're pleading guilty to, which is a second degree assault?
> BENJAMIN: Right.

(Emphasis added.)

The district court accepted Benjamin's plea to second-degree assault and dismissed the other charges. A few days after the plea hearing, the prosecutor submitted

3

copies of the police reports to the district court, stating that they were being sent "to support the factual basis for this plea." Before sentencing, Benjamin moved to withdraw his plea, claiming that he had changed his mind about pleading and expressing dissatisfaction with his attorney's representation. He professed his innocence and argued that allowing his plea withdrawal would be fair and just. The district court denied the motion and sentenced Benjamin. This appeal follows.

## D E C I S I O N

On appeal, Benjamin challenges the accuracy of his *Alford* plea. He did not argue this ground for withdrawal in district court when he moved for permission to withdraw his plea. "A defendant is free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate" to establish the requirements of a valid plea. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). We review the validity of a plea de novo. *See Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) ("Whether a plea is valid is a question of law which we review de novo.").

*A Proper Factual Basis*

A valid plea is one that is accurate, voluntary, and intelligent. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). "The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *Id.* To be accurate, a plea must be supported by a "proper factual basis," and the district court has the responsibility to ensure that a proper factual basis is established. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). A proper factual basis exists when "sufficient facts on the record . . .

4

support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted).

Here, Benjamin entered an *Alford* plea. *See North Carolina v. Alford*, 400 U.S. 25, 37–38, 91 S. Ct. 160, 167−68 (1970) (holding constitutional court's acceptance of defendant's guilty plea, even though defendant maintained his innocence, where state demonstrated strong factual basis for plea and defendant clearly expressed his desire to enter plea based on overwhelming evidence against him); *see also State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977) (permitting the acceptance of *Alford* pleas "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered").

"[C]areful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *State v. Theis*, 742 N.W.2d 643, 648−49 (Minn. 2007). An *Alford* plea "requires a *strong* factual basis." *Id.* at 649 (emphasis added). "[T]he defendant's acknowledgment that the State's evidence is sufficient to convict is critical to the court's ability to serve the protective purpose of the accuracy requirement." *Id.* In *Theis*, the supreme court enunciated a "best practice" for ensuring a defendant this protection:

> The best practice . . . is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient

5

for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty, as was done in both *Goulette* and *Ecker*.

The strong factual basis and the defendant's agreement that the evidence is sufficient to support his conviction provide the court with a basis to independently conclude that there is a *strong* probability that the defendant would be found guilty of the charge to which he pleaded guilty, notwithstanding his claims of innocence. In such a circumstance, the court can ensure that an *Alford* plea meets the accuracy prong.

*Id.* (citation omitted).

In this case, Benjamin offered an *Alford* plea to second-degree assault with a dangerous weapon. *See* Minn. Stat. § 609.222, subd. 1 (2012) (stating that a person is guilty of second-degree assault if he or she "assaults another with a dangerous weapon"). "Assault" is defined as "an act done with intent to cause fear in another of immediate bodily harm or death" or "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012). "Dangerous weapon" is defined to include a "device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." *Id.*, subd. 6 (2012).

Although Benjamin agreed, when questioned by the prosecutor, that "if [F.A.A.] testified at trial consistent with the report that she gave to the police, there's a substantial likelihood a jury would find [him] guilty of first degree burglary," he did not offer an *Alford* plea to first-degree burglary—he offered an *Alford* plea to second-degree assault with a dangerous weapon. No one asked Benjamin, and he never specifically acknowledged on the record at the plea hearing, "that the evidence the State would likely

6

offer against him is sufficient for a jury, applying a reasonable doubt standard, to find [him] guilty of the offense to which he [wa]s pleading guilty." *See Theis*, 742 N.W.2d at 649. During his plea colloquy, Benjamin merely agreed with the prosecutor that "it would be *enough evidence* that a jury *could* convict [him] of what [he was] pleading guilty to, which [was] a second degree assault." (Emphasis added.) *Cf. id.* at 650 (concluding that *Alford* plea was invalid when defendant "acknowledged that there was a mere 'risk' that he would be found guilty of the crime to which he was pleading guilty" and did nothing "to affirm that the evidence supporting the[] allegations would lead a jury to find him guilty"). We conclude that the facts contained in Benjamin's plea colloquy are insufficient to establish a strong factual basis for the *Alford* plea to second-degree assault with a dangerous weapon and that Benjamin's plea is invalid because the facts are insufficient to fulfill the accuracy requirement. *See id.* at 649 ("An *Alford* plea is not supported by the defendant's admission of guilt, and is actually contradicted by his claim of innocence; precedent therefore requires a strong factual basis for an *Alford* plea.").

The state contends that a proper factual basis is established through the complaint and the police reports. A court may consider the facts alleged in a criminal complaint in determining whether a plea contains an adequate factual basis. *See Trott,* 338 N.W.2d at 252 (stating that record contained a copy of the complaint and "defendant, by his plea of guilty, in effect judicially admitted the allegations contained in the complaint"). But, in *Trott*, in concluding that a sufficient factual basis supported Trott's plea, the supreme court stated that "[t]he record also contains pictures of the victim's injuries taken at the hospital following the beating. Moreover, the trial judge carefully interrogated the

7

defendant about the acts, and the defendant freely admitted that he had beaten the boy for up to 10 minutes." *Id.* In this case, the record contains no indication that Benjamin agreed that the district court could rely on the probable-cause section of the complaint to determine the sufficiency of the factual basis for Benjamin's plea or that the court in fact relied on the complaint. And the prosecutor did not submit the police reports to the district court until a few days after the plea hearing.

A factual basis must be established *before* a court accepts a plea. *See* Minn. R. Crim. P. 15.01, subd. 1(8); *Kochevar v. State*, 281 N.W.2d 680, 686 (Minn. 1979). Because the record does not reflect an agreement of the parties that the district court could rely on the complaint or the police reports, none of which was introduced or offered to the court at the plea hearing, we will not consider them now to supplement the facts contained in the record of the plea hearing.

*Independent Analysis of Factual Basis by District Court*

To ensure that an *Alford* plea meets the accuracy requirement of a valid plea, the district court must analyze the factual basis offered for the plea and reasonably and "independently conclude that there is a *strong* probability that the defendant would be found guilty of the charge to which he pleaded guilty, notwithstanding his claims of innocence." *Theis*, 742 N.W.2d at 647, 649 (citing *Goulette*, 258 N.W.2d at 758, 760). In this case, the record does not reflect that the district court conducted an independent analysis of the factual basis or concluded that, based on the factual basis offered, a strong probability exists that Benjamin would be found guilty of the charge of second-degree

assault with a dangerous weapon, notwithstanding his claims of innocence. The district court merely stated that it accepted Benjamin's plea.

Because the factual basis established at the plea hearing is insufficient to support Benjamin's *Alford* plea to second-degree assault with a dangerous weapon, and because the record does not reflect that the district court conducted an independent analysis of the factual basis or concluded that, based on the factual basis offered, a strong probability exists that Benjamin would be found guilty of the charge of second-degree assault with a dangerous weapon, we conclude that Benjamin's plea is not accurate and therefore is invalid.

**Reversed and remanded.**