*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0427**

State of Minnesota,
Respondent,

vs.

Zane David Foley,
Appellant.

**Filed February 5, 2024
Affirmed
Connolly, Judge**

Meeker County District Court
File No. 47-CR-21-1218

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota; and

Brandi Schiefelbein, Meeker County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Hooten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

On appeal from his conviction of second-degree assault, appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that he assaulted another person with a dangerous weapon by holding a hammer over his shoulder while arguing with that person about money. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Zane Foley with second-degree assault and gross-misdemeanor test refusal. At trial, evidence was presented establishing that, in December 2021, Foley helped his cousin and the complainant remodel a residential bathroom. According to the complainant, Foley was paid for his two weeks of work and then Foley stopped coming to the job site because there was not much work left for him.

The complainant testified that, on December 15, 2021, Foley appeared at the job site uninvited. According to the complainant, Foley entered the building holding a hammer and demanding more money for his services. The complainant claimed that Foley was angry and threatened to "break things" if he did not get paid. The complainant also testified that Foley then stood over him, threatened to hit him with the hammer, and repeatedly asked him if he was scared. And Foley's cousin testified that Foley raised the hammer "towards his shoulder" and "boxer flinch[ed]"[1] at the complainant from "three or four feet" away.

---

[1] Foley's cousin described a "boxer flinch" as "quickly moving his body towards" the complainant with the hammer in his hand.

The complainant testified that he was scared because he thought Foley was going to hit him. He told Foley that his checkbook was in his truck and called 911 when Foley went outside to wait for his cousin and the complainant. According to the complainant, he then went to his truck and retrieved his pistol from the center console. When Foley saw the pistol, he told the complainant that he was going to grab the gun. And according to the complainant, Foley continued to raise the hammer above his head "[l]ike he was gonna lunge forward."

The complainant testified that, after several confrontational minutes outside, Foley walked to his car and drove away. A sheriff's deputy later observed Foley and stopped his vehicle. The deputy testified that Foley acknowledged being at the worksite with a hammer and told the officer that he knew that the complainant was scared. During the traffic stop, the deputy observed signs of intoxication. Foley was subsequently arrested and transferred to the county jail where he refused to take a breath test.

The jury found Foley guilty of second-degree assault and test refusal. The district court then sentenced Foley to 27 months in prison. Foley now appeals, challenging only the second-degree assault conviction.

## DECISION

Foley challenges the sufficiency of the evidence supporting his conviction. In considering such a challenge, we carefully review the record to determine whether the evidence is sufficient, when viewed in the light most favorable to the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). We will not disturb a verdict "if the fact-finder, upon application of the presumption of innocence and the State's burden of proving an

offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016).

Foley was charged with second-degree assault in violation of Minn. Stat. § 609.222, subd. 1 (2020). To convict Foley of this offense, the state was required to prove that Foley assaulted another person "with a dangerous weapon." *Id.* A dangerous weapon is "[a] device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6 (2020).

Foley argues that the "evidence was insufficient to prove that [he], who possessed a hammer while asking for money, transformed the hammer into a dangerous weapon." We disagree. Ordinary objects can be transformed into dangerous weapons if they are used in a manner calculated or likely to cause great bodily harm. *State v. Coauette*, 601 N.W.2d 443, 447 (Minn. App. 1999), *rev. denied* (Minn. Dec. 14, 1999); *see, e.g., State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) (holding that a three-foot-long board used to beat a young child was a dangerous weapon); *State v. Upton*, 306 N.W.2d 117, 117-18 (Minn. 1981) (holding that a pool cue swung like a baseball bat at a victim's head constituted a dangerous weapon); *State v. Cepeda*, 588 N.W.2d 747, 749 (Minn. App. 1999) (holding that a beer bottle thrown at a victim's head was a dangerous weapon). Even hands and feet may constitute dangerous weapons if their use is calculated or likely to cause great bodily harm. *State v. Davis*, 540 N.W.2d 88, 90-91 (Minn. App. 1995), *rev. denied* (Minn. Jan. 31, 1996). Whether an object or a body part qualifies as a dangerous weapon depends on the circumstances of the assault rather than the injuries of the victim. *See id.* at 89.

4

Here, the record reflects that Foley appeared at the job site uninvited and yelled at the complainant while demanding money and holding a hammer. Although Foley claims that "there is no evidence that [he] took a stance that was aggressive or threatening," the record contradicts that assertion. The complainant specifically testified that Foley threatened him while holding the hammer in a threatening manner, and that he felt scared because he thought Foley was going to hit him. Moreover, Foley's cousin testified that Foley was holding the hammer above his shoulder while threatening the complainant and that Foley "boxer flinch[ed]" at the complainant from "three or four feet" away. And the complainant testified that, while the parties were outside, Foley continued to raise the hammer above his head "[l]ike he was gonna lunge forward." On this record, a reasonable jury could conclude that Foley intended to cause the complainant fear of imminent bodily injury with the hammer, and that Foley possessed the hammer for the purpose and with the intent of scaring the complainant. Accordingly, there was sufficient evidence to support the jury's finding that the hammer Foley used to commit the assault is a dangerous weapon.

**Affirmed.**

5