*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0838**

State of Minnesota,
Respondent,

vs.

Brent William Kruse,
Appellant.

**Filed April 1, 2024
Affirmed
Cochran, Judge**

Benton County District Court
File No. 05-CR-22-506

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Karl Schmidt, Benton County Attorney, Kathleen L. Reuter, Assistant County Attorney, Foley, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**COCHRAN**, Judge

In this direct appeal from a judgment of conviction for receiving stolen property, appellant argues that his guilty plea is unconstitutional because he was not aware of the rights he was waiving or the direct consequences of the plea. Because appellant's guilty plea was intelligently entered, we affirm.

## FACTS

On March 21, 2022, respondent State of Minnesota charged appellant Brent William Kruse with one count of unauthorized use of a motor vehicle, in violation of Minnesota Statutes section 609.52, subdivision 2(a)(17) (2020), based on allegations that he knowingly drove a motor vehicle valued at $1,000 to $5,000 without the owner's consent. On November 14, 2022, Kruse pleaded guilty to unauthorized use of a motorized vehicle, pursuant to a plea agreement with the state. Kruse later withdrew that plea and pleaded guilty to the lesser charge of receiving stolen property.

To support his first guilty plea, Kruse signed a plea petition consistent with Minnesota Rule of Criminal Procedure 15. The plea petition provided that Kruse had sufficient time to discuss his case with his attorney; was satisfied with his representation; was not under the influence at the time he committed the offense; was not pleading guilty to "get the thing over with"; understood the prosecutor's case against him; waived his right to a pretrial suppression hearing; waived his right to trial; waived his right to call and cross-examine witnesses; waived his right to testify at trial; and did not receive any promises in exchange for his guilty plea, apart from those outlined in the plea agreement.

The plea petition also provided that, in exchange for his guilty plea, Kruse would receive a stay of execution, 15 days of jail time, and a chemical assessment.

Kruse pleaded guilty with the understanding that he would receive a 17-month stayed prison sentence. During his plea hearing, Kruse stated that he had heard and understood the terms of the plea agreement; had time to review the agreement with his attorney; and wished to plead guilty under the agreement. Kruse also stated that he was satisfied with his attorney; had enough time to discuss his case with his attorney; had reviewed the plea petition before signing it; did not have any questions about his trial rights; understood that he was giving up his right to trial; was not under the influence of controlled substances or undergoing psychiatric treatment; and had not been coerced into pleading guilty. The district court determined that Kruse's guilty plea was knowing, intelligent, and voluntary; ordered a presentence investigation; and scheduled the matter for sentencing.

Following the presentence investigation, the parties realized that they had miscalculated Kruse's criminal-history score and that the correct score would result in an executed prison sentence. At the sentencing hearing, the state informed the district court that it was willing to honor the original plea agreement by reducing the charge to receiving stolen property, which carried a presumptive 17-month stayed prison sentence. Kruse initially declined the state's offer but later accepted the offer.

On March 13, 2023, Kruse pleaded guilty to receiving stolen property in exchange for a 17-month stayed prison sentence. During the plea hearing, the state explained that the terms of the agreement were "the same terms that [the parties] had agreed to [in November 2022]." Kruse stated that he had heard and understood the terms of the plea

agreement; had enough time to discuss the agreement with his attorney; and wished to plead guilty under the agreement. Kruse also stated that he was satisfied with his attorney; had enough time to discuss his case with his attorney; understood his trial rights; and understood that, by pleading guilty, he was waiving those rights. Kruse then confirmed that he did not have any questions about his trial rights; was not under the influence of drugs or undergoing psychiatric treatment; and had not been coerced into pleading guilty. The district court again determined that Kruse's guilty plea was knowing, intelligent, and voluntary. The district court convicted Kruse of receiving stolen property, in violation of Minnesota Statutes section 609.52, subdivision 3(3)(a) (2020), and sentenced him to a 17-month stayed prison sentence.

Kruse appeals.

**DECISION**

Kruse challenges the validity of his guilty plea. "An appellant may challenge a guilty plea's validity in the first instance on direct appeal." *State v. Lawrence*, 982 N.W.2d 772, 775 (Minn. App. 2022). The validity of a guilty plea is a question of law, which we review de novo. *State v. Mikulak*, 903 N.W.2d 600, 603 (Minn. 2017).

"To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983)). If a guilty plea does not satisfy each of these requirements, the plea is invalid. *State v. Theis*, 742 N.W.2d 643, 650 (Minn. 2007). The appellant bears the burden of proving that his guilty plea is invalid. *Raleigh*, 778 N.W.2d at 94.

4

Kruse argues that his guilty plea is invalid because it was neither voluntary nor intelligent when entered. Voluntariness and intelligence are distinct requirements. As the supreme court has explained:

> The purpose of the voluntariness requirement is to insure that the defendant is not pleading guilty because of improper pressures. The purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea.

*Trott*, 338 N.W.2d at 251. The consequences of a guilty plea "refer to [the] plea's direct consequences, namely the maximum sentence and fine." *Raleigh*, 778 N.W.2d at 96.

Kruse contends that his guilty plea was involuntary and unintelligent "because he was not informed of the maximum sentence and fine he faced, all the rights he was waiving, and all the consequences of pleading guilty." Each of these factors relate to whether Kruse's plea was *intelligent*—not whether it was *voluntary*. *See id.*; *Trott*, 338 N.W.2d at 251. We therefore consider only whether Kruse's plea was intelligent without addressing whether it was voluntary.

Kruse asserts that his guilty plea was unintelligent because (1) "[t]he record does not show that anyone ever informed Kruse of the maximum sentence or fine that he faced"; (2) Kruse neither acknowledged nor waived his right to confront his accusers or the privilege against self-recrimination; and (3) the district court did not ensure that Kruse understood the "additional consequences of pleading guilty and other crucial matters" specified in rule 15.01, subdivision 1. We are not persuaded.

5

To begin, the record reflects that Kruse understood the charges against him, the rights he was waiving by pleading guilty, and the consequences of his guilty plea. During his first plea hearing, Kruse pleaded guilty pursuant to a signed rule 15 plea petition, which confirmed his understanding of his trial rights, his waiver of those rights, and the consequences of pleading guilty. Kruse later withdrew his first guilty plea due to an error in calculating his criminal-history score, but he reached a new plea agreement with the state a few months later. Kruse's second plea agreement contained the "same terms" as the first. In addition, at each plea hearing, Kruse was represented by the same counsel and appeared before the same district court judge. At each plea hearing, the district court questioned Kruse about his understanding of the plea agreement, his trial rights, and the consequences of pleading guilty. And at each plea hearing, the district court specifically asked Kruse if he had any questions about his trial rights, to which Kruse responded, "No." Lastly, the record shows that Kruse had an extensive criminal record at the time of his plea hearing, which "makes it unlikely that he did not understand the proceedings." *State v. Bryant*, 378 N.W.2d 108, 110 (Minn. App. 1985), *rev. denied* (Minn. Jan. 23, 1986). Because the circumstances surrounding Kruse's second guilty plea show that he understood the charges against him, the rights he was waiving by pleading guilty, and the consequences of his guilty plea, we conclude that Kruse's second guilty plea was intelligent.

Furthermore, we are not convinced that the guilty plea is invalid because the district court did not strictly follow rule 15.01 when Kruse entered his second guilty plea. Our caselaw does not require perfect compliance with rule 15.01. To the contrary, we have

6

"recognize[d] the demanding circumstances in which district court judges function and have rejected arguments that district courts must comport with rule 15's lists of questions and advisories verbatim." *State v. Lopez*, 794 N.W.2d 379, 383 (Minn. App. 2011); *see also State v. Doughman*, 340 N.W.2d 348, 351 (Minn. App. 1983), *rev. denied* (Minn. Mar. 15, 1984). Likewise, we have held that "a [district] court is not required to inform a defendant of all his constitutional rights before accepting the guilty plea." *Hernandez v. State*, 408 N.W.2d 623, 626 (Minn. App. 1987). As long as "the record reveals careful interrogation by the [district] court and the defendant had [a] full opportunity to consult with his counsel before entering his plea, the court may safely presume that the defendant was adequately informed of his rights." *Id.* As discussed above, the record shows the district court carefully interrogated Kruse and that Kruse had a "full opportunity to consult with his counsel before" pleading guilty. *See id.* Kruse's demand for strict compliance with rule 15.01 is therefore unavailing.

We are also unpersuaded by Kruse's attempt to distinguish his case from our decision in *Doughman*. In *Doughman*, we held that a defendant's failure to sign a rule 15 plea petition and the district court's failure to question the defendant in the manner set forth in rule 15.01 did not render his guilty plea unintelligent because (1) the defendant waived the filing of a plea petition to expedite sentencing; (2) the district court "had before it two additional criminal files in which the [defendant] had [pleaded] guilty and signed a plea petition stating that he understood his rights"; and (3) neither the execution of a plea petition nor detailed questioning by the district court were specifically required by rule 15.01. 340 N.W.2d at 351. Kruse argues that *Doughman* is inapposite because, in that

case, the district court's inquiry was more thorough and the record contained evidence that does not exist here—namely, testimony about the defendant's discussions with his attorney about his rights. *See id.* at 353. We disagree.

Contrary to Kruse's assertion, the facts of this case bear a striking resemblance to *Doughman*. For instance, in *Doughman*, this court concluded that Doughman's guilty plea was intelligent in part because he had submitted signed plea petitions in other matters before the same district court and with the assistance of the same counsel. *Id.* at 353. Likewise, here, Kruse submitted a signed plea petition to the district court with the assistance of the same counsel who aided him in entering his second guilty plea. Indeed, the facts here are *more* favorable to the conclusion that the relevant guilty plea was entered intelligently; while Doughman's signed plea petitions were submitted in different matters, Kruse's signed plea petition was submitted in the same matter only four months prior to his second guilty plea and contained the "same terms" as Kruse's second plea agreement. *Id.* Accordingly, Kruse's attempt to distinguish *Doughman* is unpersuasive.

In sum, Kruse has not met his burden to show that his guilty plea is invalid. We therefore conclude that Kruse is not entitled to withdraw his guilty plea.

**Affirmed.**