STATE OF MINNESOTA

IN SUPREME COURT

A22-0172

Court of Appeals                                                                 Moore III, J.

State of Minnesota,

               Respondent/Cross-Appellant,

vs.                                                                               Filed:  April 3, 2024
                                                                                  Office of Appellate Courts
David Darnell Jones, Jr.,

               Appellant/Cross-Respondent.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Scott A. Hersey, Special Assistant Crow Wing County Attorney, Saint Paul, Minnesota, for respondent/cross-appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, Saint Paul, Minnesota, for appellant/cross-respondent.

_____

S Y L L A B U S

1.      The defendant's contemporaneous statements that he planned to beat the victim constitute direct evidence of the defendant's intended use of a wooden board.

2.      The direct evidence of the defendant's intended use of a wooden board was calculated or likely to produce death or great bodily harm.  Accordingly, a jury could reasonably conclude that the board was a dangerous weapon.

Affirmed.

OPINION

MOORE III, Justice.

This case requires us to determine whether there was sufficient evidence to sustain the conviction of appellant/cross-respondent David Darnell Jones, Jr. (Jones) for second-degree assault after he threatened to beat A.M. while holding a wooden board that was approximately 2 inches by 3 inches and 3 feet long (board).[1]  To commit second-degree assault, a defendant must assault another person with a dangerous weapon.  Minn. Stat. § 609.222 (2022).  The State alleged that Jones brandished the board as a dangerous weapon near the semi-conscious victim, while simultaneously threatening to "beat [A.M.] bloody."  Jones pleaded not guilty and demanded a jury trial.  After the evidence was presented to the jury, the district court instructed the jury on assault-fear.  *See* Minn. Stat § 609.02, subd. 10(1) (2022) (prohibiting an act committed with intent to cause fear in another of immediate bodily harm or death).  The district court also instructed the jurors that an object which is neither a firearm nor designed as a weapon can still be considered a dangerous weapon if the defendant intended to use it in a manner likely to produce death or great bodily harm.  Minn. Stat. § 609.02, subd. 6 (2022).  Only the dangerous weapon element is at issue on appeal.

A divided panel of the court of appeals affirmed Jones's conviction for second-degree assault.  We conclude that Jones's statements expressing his plan to harm A.M.,

---

[1]    The court of appeals referred to the board as a "2x4," which is consistent with the colloquial term for this type of lumber and with how it was sometimes referred to at trial, even though the board's actual dimensions were approximately two inches by three inches.

made while the assault was occurring and as Jones was brandishing the board, are direct evidence of his intent to use the board in a manner likely to produce great bodily harm. We further conclude that, based on the direct evidence of Jones's intended use of the board, a jury could reasonably conclude that the board was a dangerous weapon. Accordingly, we affirm the court of appeals.

FACTS

Following a June 2021 altercation with A.M., the State charged Jones with second-degree assault-fear (dangerous weapon), Minn. Stat. § 609.222, subd. 1, and third-degree assault (substantial bodily harm), Minn. Stat. § 609.223, subd. 1 (2022). The State alleged that Jones committed third-degree assault by striking A.M., causing her to fall to the ground unconscious, and that he then committed second-degree assault-fear by threatening to beat A.M. while retrieving and brandishing the board at A.M. as she lay on the ground semi-conscious. At the jury trial, the following evidence was presented.

On June 4, 2021, A.M. entered the residence of K.S. and walked to the doorway of K.S.'s bedroom, where K.S. and Jones were asleep in bed. There, A.M. demanded keys to a car whose rightful possession A.M. and Jones disputed. Jones rose from the bed screaming and struck A.M. in the neck or head, causing her to fall to the ground and hit her head. K.S. then left the bed to check on A.M., who was unconscious for approximately 2 minutes.

Meanwhile, Jones went into another room and returned to the bedroom wielding the board. The board was 2 inches by 3 inches and 3 feet long. Jones approached A.M. holding the board over his shoulder like a baseball bat. Jones got approximately 6 or 7 feet away

3

from A.M., who testified that he had "death in his eyes." K.S. was between A.M. and Jones, standing "nose to nose" with Jones, and pleading with him to put the board down and not further harm A.M. A.M. testified that K.S. told Jones that he would have to beat her with the board before he could get to A.M. Jones did not try to forcefully pass K.S. While K.S. and Jones were arguing, A.M. managed to crawl out of the house and call 911. Jones eventually put the board down. He did not pursue A.M. or attempt to attack her again.

At trial, the jury heard testimony from K.S. regarding whether, and when, Jones made threatening statements towards A.M. During her testimony, K.S. made several assertions concerning Jones's statements before and during the altercation with A.M. In the first instance, the prosecutor asked K.S., "And what did Mr. Jones do while she laid there not moving?" K.S. responded, "Listened to me and didn't strike her over the head with that wooden beam. Threatened that he was going to, but." The prosecutor then asked, "What did he say?" K.S. responded that Jones stated, "I'm going to beat her bloody."

Later, the prosecutor asked, "Did [Jones] make any comments to you the evening prior about [A.M.]?" K.S. reported that Jones said, "If she shows up here I'm going to beat her ass." The prosecutor then again asked K.S. if Jones said anything while he was holding the board, and she responded, "Not that I recall." After K.S. identified the board as the object Jones wielded, the prosecutor asked her, "And he threatened to use it to beat [A.M.] up?" K.S. responded, "He said he was going to beat the bitch bloody."

On cross-examination, defense counsel also asked K.S. whether Jones said anything while wielding the board: "And you didn't hear him saying anything at that time?" K.S.

4

responded, "No, I was begging and pleading for him to stop and put it down and don't let—we're not going to do this."

The jury found Jones guilty of both second- and third-degree assault. The district court convicted Jones of both counts and sentenced him to 39 months in prison for second-degree assault.

In a nonprecedential opinion, a divided panel of the court of appeals affirmed Jones's conviction for second-degree assault but reversed his third-degree assault conviction as a lesser-included offense. *See State v. Jones*, No. A22-0172, 2023 WL 2960814, at *1 (Minn. App. Apr. 17, 2023). In affirming the second-degree assault conviction, the majority began by assuming that the State presented no direct evidence of Jones's intent and instead evaluated whether the State presented sufficient circumstantial evidence that he intended to use the board in a manner calculated or likely to produce death or great bodily harm. *Id.* at *3. The court of appeals concluded that the State did not present sufficient circumstantial evidence to uphold the conviction. *Id.*

But that was not the end of the analysis. *Id.* at 4. The court of appeals determined that there was direct evidence of intent: Jones made threatening statements while he grabbed and wielded the board. *Id.* Identifying it as "one of those rare cases" of direct evidence of intent, the court concluded the testimony from K.S. that Jones said " 'I'm going to beat her bloody,' or that 'he was going to beat the bitch bloody' " was sufficient to prove he intended to use the board in a manner "calculated or likely to produce death or great bodily harm." *Id.* at *3–4 (quoting Minn. Stat. § 609.02, subd. 6).

5

The court of appeals dissent disagreed that Jones's statements were direct evidence of his intent. *Id.* at *7 (Gaïtas, J., dissenting). The dissent determined that an inferential step was necessary to ascertain Jones's intended use of the board from his statements, and therefore the statements were not direct but rather circumstantial evidence. *Id.* Considering only Jones's statements made during the commission of the second-degree assault, the dissent concluded that there was insufficient circumstantial evidence to sustain the conviction. *Id.*

We granted Jones's and the State's requests for further review on the second-degree assault conviction.

ANALYSIS

Jones was convicted of second-degree assault under Minnesota Statutes section 609.222, subdivision 1, which makes it a crime to assault a person with a dangerous weapon. Second-degree assault requires the State to prove that the defendant committed an assault and used a dangerous weapon during the commission of the assault. The State charged Jones with this crime under an "assault-fear" theory of liability, alleging that Jones committed the assault by acting with the intent to cause A.M. to fear immediate bodily harm or death.[2] *See* Minn. Stat. § 609.02, subd. 10(1); *State v. Fleck*, 810 N.W.2d 303,

---

[2] In an assault-fear crime, "[t]he intent of the [defendant], as contrasted with the effect upon the victim, becomes the focal point for inquiry." *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012) (alteration in original) (citation omitted) (internal quotation marks omitted). Thus, the district court instructed the jury that "it is not necessary for the State to prove that [Jones] intended to inflict bodily harm or death, but only that [Jones] acted with the intent that [A.M.] would fear [Jones] would act." The court further directed the jury that "it is not necessary for there to have been any physical contact with the body of [A.M.]."

308 (Minn. 2012).  Neither party disputes that Jones committed assault-fear, but they do dispute whether Jones used a dangerous weapon during the assault.

The State alleged that the board Jones wielded during the assault-fear was a dangerous weapon.  The district court provided the jury with a definition of the term "dangerous weapon" from the statutory definition.  Under that provision, "dangerous weapon" is defined as:

> any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid *or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm*, or any fire that is used to produce death or great bodily harm.

Minn. Stat. § 609.02, subd. 6 (emphasis added).  And "great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm."  Minn. Stat. § 609.02, subd. 8 (2022).

The issue for decision is whether the State presented sufficient evidence that Jones used a dangerous weapon to assault A.M. under those statutory definitions.  Here, there is no evidence that Jones used a firearm, any device designed as a weapon, or fire, so we do not consider those definitions of "dangerous weapon."  Because there is no evidence that he used the board to strike A.M., we also do not contemplate whether he used the board in a manner calculated or likely to produce death or great bodily harm.  Our analysis focuses on the remaining definition—whether the State presented sufficient evidence that Jones

7

*intended to use* the board in a manner *calculated or likely to produce death or great bodily harm*.

We have adopted two tests for evaluating a sufficiency-of-the-evidence claim. When a disputed element of the offense is proven by direct evidence, the traditional standard of review applies. But when a disputed element of the offense is proven by circumstantial evidence, a heightened two-step analysis standard of review applies. *State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016). In some instances, the State might have relied on both direct and circumstantial evidence to prove a disputed element. In those instances, we have held that "when a disputed element is sufficiently proven by direct evidence alone . . . it is the traditional standard, rather than the circumstantial-evidence standard, that governs." *Id.*

I.

We first address whether statements Jones made about beating the victim are direct, rather than circumstantial, evidence of his intended use of the board. The parties dispute what statements were made and when, along with their characterization as either direct or circumstantial evidence.

A.

Jones argues that he only made statements about beating A.M. the night before the altercation and that the record supports this factual conclusion. We reject Jones's claim of when the disputed statements were made.

Although K.S. gave conflicting testimony about whether Jones said anything during the moments surrounding the second-degree assault, "we 'view the evidence in a light most

8

favorable to the verdict and assume the fact-finder disbelieved any testimony conflicting with that verdict' when considering whether sufficient evidence supports the jury's guilty verdict." *State v. Cruz*, 997 N.W.2d 537, 551 (Minn. 2023) (quoting *State v. Chomnarith*, 654 N.W.2d 660, 664 (Minn. 2003)). Applying this standard, we must assume that the jury believed K.S.'s testimony that Jones made statements while wielding the board and discredited her testimony that Jones said nothing while he held the board. K.S. testified that while A.M. was lying on the floor, Jones "[t]hreatened he was going to" strike her over the head with the board. The State immediately asked what Jones specifically said, and K.S. testified that Jones stated, "I'm going to beat her bloody." The testimony K.S. later gave, after positively identifying the board Jones wielded, that "[Jones] said he was going to beat the bitch bloody," further supports the conclusion that Jones made statements of planned intent contemporaneously with the second-degree assault.[3]

B.

We turn next to whether these statements by Jones are direct or circumstantial evidence. To do so, we look to our definitions of each type of evidence. Direct evidence is " '[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.' " *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (alteration in original) (quoting *State v. Clark*, 739 N.W.2d 412, 421 n.4 (Minn.

---

[3]    When viewed in a light most factorable to the verdict, the record also supports the conclusion that the night before the assault, Jones told K.S. that if A.M. came to the residence he was "going to beat her ass." Because we uphold Jones's conviction based on other evidence, we do not need to decide whether this statement is direct or circumstantial evidence of Jones's intended use of the board.

9

2007)).  In contrast, circumstantial evidence is defined as " 'evidence from which the factfinder can infer whether the facts in dispute existed or did not exist.' "  *Id.* (quoting *State v. Hokanson*, 821 N.W.2d 340, 354 n.3 (Minn. 2012)).  Accordingly, "circumstantial evidence always requires an inferential step to prove a fact that is not required with direct evidence."  *Id.*

Intent is a state of mind, and therefore, it is "generally proved circumstantially—by drawing inferences from the defendant's words and actions in light of the totality of the circumstances."  *State v. Clark*, 739 N.W.2d 412, 422 (Minn. 2007).  Although we recognize that "[d]irect evidence of intent is rare," *State v. Griese*, 565 N.W.2d 419, 425 (Minn. 1997), this case presents such a rare instance.

Our conclusion that Jones's statements are direct evidence of his intent is informed by our decision in *State v. Horst*, 880 N.W.2d 24 (Minn. 2016).  Horst challenged the sufficiency of the evidence to sustain her conviction for first-degree premeditated murder of her husband, which was based on an aiding and abetting theory of liability.  *Id.* at 39.  To satisfy the mens rea requirement for accomplice liability, the State had to prove, in part, "Horst's . . . intent for her presence or actions to further the commission of the crime."  *Id.* at 40.  Horst told multiple witnesses, "I want him dead," referring to her husband.  *Id.*  We held that Horst's statement about her husband was direct evidence of her intent to facilitate his murder, explaining that "[t]he jury did not need to draw any inferences about the purpose of her actions, because this statement unambiguously indicated that her participation was intended to facilitate [her husband's] murder."  *Id.*

10

Jones fails to distinguish his statements from those in *Horst.* Both in *Horst* and here, the issue is the defendant's intent, and the challenged evidence is similarly eyewitness testimony of the defendant's statements about the relevant intent. In *Horst*, we held a defendant's statement that she wanted the victim dead was direct evidence of her intent to aid the principal in killing the victim. *Id.* Just like in *Horst*, Jones's statements about how he planned to use the board, made during the timeframe when Jones brandished the board while A.M. was lying on the floor, require no inference to determine his intended use of the board: Jones intended to use the board to beat A.M. "bloody." Indeed, the contemporaneous timing of the statements aids us in concluding that the statements were direct evidence of Jones's mens rea. Accordingly, Jones's statements that he was going to "beat [A.M.] bloody" or "beat the bitch bloody" are direct evidence of his intended use of the board.

## II.

Having decided that Jones's statements are direct evidence of his intent, we next evaluate this evidence under our sufficiency of the evidence standard of review to determine whether the evidence is sufficient to affirm the second-degree assault conviction. When a conviction is based on direct evidence, the traditional standard for evaluating the sufficiency of the evidence applies: In "considering a claim of insufficiency of the evidence, [we] must ascertain whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Whittaker*, 568 N.W.2d 440, 452 (Minn. 1997). We will not overturn the verdict if the jury, acting with regard for the

11

presumption of innocence and the State's burden of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

We conclude that Jones's intended use of the board, to "beat [A.M.] bloody," was "likely to produce . . . great bodily harm," and thus was sufficient to support the required element of assault with a "dangerous weapon" for second-degree assault. In the context of the dangerous weapon statute, "likely" means "probable or reasonably expected." *State v. Abdus-Salam*, 1 N.W.3d 871, 877 (Minn. 2024). Here, the district court instructed the jury consistent with the statute that "great bodily harm" is "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8. Using the board to "beat [A.M.] bloody" would create a high probability of death, permanent disfigurement, or impairment of the function of a bodily member or organ or other serious bodily harm. *See State v. Trott*, 338 N.W.2d 248, 250 (Minn. 1983).

In *Trott*, we considered whether a board of similar size to Jones's board was a dangerous weapon. *Id.* We concluded that the board, used by a man to beat a child, was a dangerous weapon, stating, "Clearly, a board of this nature qualifies as a dangerous weapon if so used." *Id.* at 252. We have reached similar conclusions regarding the use of a broom handle and a pool cue to a victim's head. *See, e.g.*, *State v. Bradley*, ___ N.W.3d ___, No. A22-0960, 2024 WL 1183847 (Minn. Mar. 20, 2024); *State v. Upton*, 306 N.W.2d 117, 117–18 (Minn. 1981). We possess the same degree of certainty about the nature of Jones's

12

board.  Accordingly, we hold that the evidence is sufficient for a jury to reasonably conclude that the board was a dangerous weapon because Jones intended to use the board in a manner likely to cause great bodily harm.

CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.